THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR KENT BARNES, Defendant-Appellant.

Fifth District   No. 77-312

Opinion filed March 21, 1979.—Rehearing denied April 20, 1979.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the circuit court of Madison County entered on a jury verdict finding him guilty of armed robbery. Defendant first contends that the trial court erred in denying his motion to suppress evidence obtained in a warrantless search of an automobile following his arrest without probable cause. We agree with this contention, so it is unnecessary to discuss defendant's remaining issues.

The following facts were elicited from the testimony at the hearing on the motion to suppress. The defendant was arrested and the automobile in which defendant was riding was searched following a stop by Patrolman Eugene Rexford of the Alton Police Department. Officer Rexford testified that late in the evening of December 7, 1976, he was patrolling alone in his squad car in Alton. Shortly after midnight he received a police radio dispatch of an armed robbery at the H & H Tavern in Wood River. Two suspects were described. Suspect number one was described as a man about 60 years of age, 5 feet 10 inches tall, not clean shaven, wearing a brown overcoat and grey dress hat, possibly carrying a .22-caliber revolver. Suspect number two was described as a male about 25 years of age, 5 feet 8 inches tall, weighing about 160 pounds, with a full beard. The suspect vehicle was described as an older model white Chrysler.

About 12:21 a.m. on December 8, 1976, Officer Rexford received another radio dispatch concerning an armed robbery of Willie's Tavern in East Alton. The suspect was described as a white male about 65 years of age, wearing a plaid hat and plaid jacket. The automobile involved was described as a maroon 1973 Oldsmobile. No information was given as to the number of passengers in the automobile.

At approximately 12:30 a.m., Officer Rexford was parked with lights off and engine running, in an alleyway facing College Avenue. He was less than a car's length from College Avenue. At this time he observed a dirty, ginger-colored two-door Mercury with three men traveling west on College Avenue at about 15 miles per hour. Officer Rexford saw an older white male with grayish hair, wearing what he thought was a plaid shirt or sweater and a plaid stocking cap, sitting in the front passenger seat of the automobile. He appeared to be between 5 feet 9 inches tall and 6 feet tall, and had a few days' growth of facial hair. Officer Rexford then looked in the back seat and saw what he took to be a white male in his twenties with what appeared to be a beard. Officer Rexford decided to stop the vehicle, and pulled out behind it and followed it for about three miles. During that time he observed no violations of the law and nothing suspicious in the operation of the vehicle or the behavior of its occupants. By police radio Officer Rexford made a license check and obtained the name of the owner of the vehicle. He also obtained a further description of the hat worn by the older man in the Wood River robbery, it being described as "an old grey dress hat." He also called for assistance, and when Patrolman Hampton joined him, Officer Rexford turned on his red flasher. The Mercury pulled over without incident. Officers Rexford and Hampton approached the vehicle with guns drawn. The men inside offered no resistance.

The officers ordered the three men outside of the Mercury. Officer Rexford observed that the older man, whom he had thought was wearing a plaid shirt and plaid hat and had therefore decided to stop him, was in fact wearing neither a brown overcoat and gray dress hat nor a plaid jacket and plaid hat, as indicated in the radio broadcasts. Before searching the man, Officer Rexford conducted a search of the car. Officer Rexford stated at both the suppression hearing and the trial that prior to searching the car, the men were not under arrest and were free to go. However, he also admitted that they, in effect, were in custody, that they weren't going to run off, and that he and Officer Hampton were watching them with their guns drawn. At the suppression hearing, the Assistant State's Attorney conceded that the men had been arrested at this point, before the search of the car. Under the front seat Officer Rexford found a brown paper bag containing an assortment of dollar bills. Officer Rexford

then "patted down" the three men, handcuffed them, placed them in the police cars, and returned to searching the Mercury. This second search produced a gun from behind the rear seat at the driver's side. The court denied the motion to suppress based on the impropriety of the arrest and search.

The fourth amendment to the United States Constitution and article I, section 6 of the 1970 Constitution of Illinois prohibit unreasonable searches and seizures, and require a warrant or probable cause to justify any searches or seizures. Here no warrant was involved. The issue is whether Officer Rexford had probable cause to arrest these three men and/or search their automobile.

■■ The State contends that probable cause to arrest was provided by the general descriptions of the suspects on the police radio broadcasts, citing *People v. Attaway* (1st Dist. 1976), 41 Ill. App. 3d 837, 354 N.E.2d 448. However, "a general description is insufficient to provide the probable cause necessary to justify an arrest unless it is supported by other relative facts and circumstances known to the arresting officer." (*In re Woods* (1974), 20 Ill. App. 3d 641, 646, 314 N.E.2d 606. See also *People v. Mills* (1968), 98 Ill. App. 2d 248, 240 N.E.2d 302.) In *Woods*, the police arrested the defendant near the scene of the offense on the basis of a description involving a black youth "about 18 years of age, weighing approximately 150 to 160 pounds and about 5 feet 8 inches tall * * * [wearing] a long, dark red coat." This was held insufficient to provide probable cause. Likewise, in *Attaway* the arrest was justified not solely because of the general description, but because their automobile was viewed traveling in excess of the speed limit within three blocks of the scene of an armed robbery which had just been reported on police radio as being in progress. Furthermore, when the officer put on his flashing lights, they did not pull over but continued attempting to drive away. This behavior in *Attaway* constituted supporting facts known to the arresting officer. Thus *Attaway* is distinguishable from this case, where Officer Rexford testified he followed the automobile for several miles without observing any traffic violations or suspicious operation of the vehicle, and the driver pulled over without resistance when Officer Rexford turned on his flashing light. Furthermore, in *Attaway* the defendants did match the description of two males in their early twenties wearing red jackets. In this case, the car matched neither of the cars described in the two police broadcasts, and although Officer Rexford at first glance thought the older man was wearing a plaid sweater or jacket and plaid hat, he observed when he stopped the car that the older man was not so attired. At this point the only part of the description which was valid was the approximate age of the two suspects, with the man in his twenties

wearing a beard. This is far too general to constitute probable cause. All the supporting facts known to Officer Rexford negated the possibility that these men were involved. He had been told that the suspect automobiles involved in the two armed robberies were an "older model white Chrysler" and a "maroon 1973 Oldsmobile." One robbery listed two suspects, the other listed one suspect, and he arrested three men. The older man in the first robbery was described as wearing a brown overcoat and gray dress hat, and the older man who was the sole suspect in the second robbery just 10 minutes or so before was described as wearing a plaid jacket and plaid hat. The older man he arrested was not wearing clothing which fit either description. Not only is *Attaway* thus distinguishable, but the standards of *Woods* and *Mills* are clearly not met. Here there was not only an absence of other supporting facts and circumstances known to an arresting officer, but also an absence of a general description which fit these suspects.

It is clear that at the time Officer Rexford stopped the vehicle, he lacked probable cause to believe that the vehicle had been used in the commission of either armed robbery, and further lacked probable cause to believe that any of the occupants of the vehicle had committed such crimes. Consequently, any evidence seized in the search was discovered in a search incident to an illegal arrest. The denial of the motion to suppress was error, and we reverse and remand for a new trial, at which all evidence tainted by this illegal arrest should be excluded. This would include evidence of the post-arrest lineup identification of the defendant. *People v. Hornal* (1975), 29 Ill. App. 3d 308, 330 N.E.2d 225.

We have analyzed this case from the viewpoint that Officer Rexford "arrested" these three men when he stopped their vehicle and ordered them to exit the vehicle at gunpoint. This viewpoint was conceded by the Assistant State's Attorney at the suppression hearing, and comports with our analysis of when an arrest occurs as expressed in *People v. Robbins* (1977), 54 Ill. App. 3d 298, 369 N.E.2d 577.

We observe that neither the State nor the defendant briefed or argued the position that Officer Rexford may have simply made an investigatory "stop" within the meaning of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, or the Code of Criminal Procedure of 1963 provisions (Ill. Rev. Stat. 1975, ch. 38, par. 107—14). Therefore, we need not analyze this case from the "stop" viewpoint. We note as dictum, however, that under *Terry* and the Illinois limited detention statute cited above, the courts have held that in detentions short of arrest, the focus of attention is on the portion of the fourth amendment regarding "reasonable" seizures, and the applicable standard is not one of probable cause, in the traditional sense. (See Cook, Constitutional Rights of the

Accused: Pretrial Rights 32 (1972).) However, there are three restrictions imposed upon the right of policemen to "stop" and "frisk" individuals suspected of criminal acts. First, the "stop" itself must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.) Inarticulate hunches cannot suffice; there must be an objective basis for the determination. (*Terry v. Ohio* (1968), 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868.) Second, assuming a valid "stop," a limited search of the suspect for weapons is justified only if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (*Terry v. Ohio* (1968), 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868.) Finally, the search authorized in *Terry* is one confined in scope to an intrusion reasonably designed to discover objects capable of use as weapons. (*Terry v. Ohio* (1968), 392 U.S. 1, 29, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868; *People v. Lee* (1971), 48 Ill. 2d 272, 276, 269 N.E.2d 488.) Under these guidelines, if we were to analyze this case as a "stop" instead of an "arrest," Officer Rexford clearly lacked "specific and articulable facts" to justify the stop. At best, he had an "inarticulate hunch." Second, there was no reasonable belief that his or Officer Hampton's safety was endangered. The suspects were outside the car, offering no resistance, and covered with drawn guns. They were not searched for weapons. Rather, the automobile was searched. Finally, this search of the car far exceeded the limited scope of search permitted by *Terry*.

For the foregoing reasons the defendant's conviction is reversed and this cause is remanded to the circuit court of Madison County for a new trial.

Reversed and remanded.

KUNCE and JONES, JJ., concur.