THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE NELSON, Defendant-Appellee.

First District (2nd Division)    No. 80-810

Opinion filed June 23, 1981.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Casimir J. Bartnik, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Ronald P. Alwin, Assistant Public Defender, of counsel), for appellee.

Mr. PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant was arrested on October 25, 1978, and charged with unlawful use of weapons for carrying a loaded revolver within Chicago city limits while on parole. (Ill. Rev. Stat. 1977, ch. 38, par. 24—1(a)(10).)

He filed motions to quash arrest and suppress evidence which alleged that police arrested him in front of his home and searched his father's automobile without warrant or probable cause, and sought the suppression of a revolver allegedly found in the trunk of the automobile. After evidentiary hearings, defendant's motions were denied. Prior to trial, defendant renewed his motions before a second judge who, after reading the transcript only and without hearing any new evidence, granted defendant's motions. From this order the State appeals. For the reasons which will appear, we reverse and remand.

On July 5, 1979, an evidentiary hearing was conducted on defendant's motions before Judge Romie J. Palmer. Testifying on his own behalf, defendant stated that as he drove his father's car into the driveway of the family home at 3 or 3:30 a.m., on the morning of October 25, 1978, he was approached by police officers, who told him, "Get out of the car, Reverend Nelson." Defendant left the car, explained that he was Reverend Nelson's son, and was frisked, handcuffed, and placed in a paddy-wagon by police. The officers took defendant's keys and searched his father's car without asking his consent. Defendant testified that his father owned a gun, but that he had never seen it. On cross-examination, defendant testified that he had spent the previous evening with a girlfriend, and had driven her home in his father's car. He had pulled into the driveway and parked the car parallel to the street. He wore a "darkish" brown coat, but denied that police seized a gun from him at that time. After he was placed in the wagon, defendant saw an officer open the door to his father's car and drive away in it. The car was a black Oldsmobile 98.

James Nelson testified at the July 5, 1979, hearing on his son's behalf. He had loaned his car to defendant on the evening of October 24th. The next morning the automobile was missing; it was recovered from the police pound the following day. He was the registered owner of a .22-caliber automatic pistol, with a five-inch barrel and a white handle. On October 25, the gun was locked in the trunk of his car, but was missing when the car was recovered from the police pound. On cross-examination, he stated that his car was black. He allowed his son to borrow it in order to drive a church member home. He forgot to tell defendant that he had placed his gun in the trunk of the car earlier in the day, in order to keep it hidden from visiting grandchildren. He had owned the gun for a long time and it was registered in his name. The gun was white in color, contained five or six shots, and was not an automatic. He did not see the police around his house, and did not see the police search his car or seize anything. He kept a gun registration card at home, but had forgotten to bring it to court.

Officer Edward P. Rynne, of the Chicago Police Department,

testified for the State at the same hearing. He was on duty on the morning of October 25, 1978. He received a city-wide radio transmission over his squad car radio at approximately 4:15 a.m., which concerned a vehicle with two occupants sought in connection with an armed robbery in the Fourth Police District. The vehicle was described as a large, black, late-model car with a license plate number of either GK or FK 4209. The wanted offenders were two male Negroes, with one wearing a black leather jacket. Officer Rynne and his partner traced the addresses listed for both license numbers through the computer terminal in their squad car. The GK 4209 number was registered to an individual in the western suburbs; the FK 4209 number belonged to a Mr. Nelson, who lived at 1957 W. 62nd Street in Chicago. The latter address was located within the police district, and the officers proceeded to defendant's house and parked outside. Between 5:50 and 6 a.m., Officer Rynne observed a dark-colored Oldsmobile parked on the street in front of the 1957 address, with the number FK 4209 on the rear license plate.

Officer Rynne testified further that defendant emerged from the car wearing very dark clothing, and started walking toward the house. Rynne and his partner then approached defendant, identified themselves as police officers, and told him to stop. As defendant stood on the curb next to his car, the officers asked his name and ordered him to keep his hands in front of him. Rynne's partner patted down the defendant and said, "I've got something," then reached into the defendant's right coat pocket and pulled out a gun. The gun was a .22-caliber Rohm revolver, with a white handle and a blue steel barrel. The officers placed defendant under arrest and told him that he was also wanted for investigation of an armed robbery east of his neighborhood. Defendant was then handcuffed, placed in a patrol wagon, and transported to the police station.

On cross-examination, Officer Rynne testified that defendant was alone in the car, and made no effort to escape or resist when the officers told him to stop. The officers asked him his name, and he replied, "Clarence Nelson." Rynne did not ask him about a Reverend James Nelson, and did not recall the first name of the car's registered owner. Defendant was not told that he was under arrest when he was patted down, although he was not free to leave because the police thought he was a dangerous armed robbery suspect. The car was towed away and impounded, either as prisoner's property or because it had been used in the commission of the armed robbery. Rynne saw his partner remove the gun from defendant's pocket and denied that it had been found in the trunk of the car, although the car might have later been searched at the police pound. The gun was registered to James A. Nelson. Rynne testified that he did not recall whether the radio transmission he had received

included a description of the suspects' complexion. It did not include the suspects' height, weight, or hair style.

Following Officer Rynne's testimony, the hearing was continued to July 6, 1979, then continued again until July 9, at which time the court denied both of defendant's motions.

On September 27, 1979, following the selection of a jury, defendant appeared before the trial court and moved the court to reconsider or reopen the original denial of his motions to quash arrest and suppress evidence. Defense counsel cited as grounds for reconsideration his discovery of *People v. Barnes* (1979), 70 Ill. App. 3d 566, 388 N.E.2d 869, which had been filed on March 21, 1979. The prosecution objected to a rehearing, on grounds that the issues had already been fully litigated, and that defendant was estopped from collaterally relitigating the same issues without some showing of newly discovered facts. The trial court overruled his objection, on the basis that it had not participated in the original denial of the motion, and was "aware of nothing that stops this Judge from hearing a motion if [*sic*] any case that he is involved in." The parties then submitted to the court a transcript of the original proceeding. After taking a recess, the court heard arguments from opposing counsel concerning the validity of the police search and arrest of defendant. The prosecution again objected to a reconsideration of the suppression motion, because defendant had made no showing of exceptional circumstances or newly discovered evidence. The court denied the objection on the grounds that a trial judge may hear motions to suppress regardless of the pretrial decisions reached by another judge. It sustained defendant's motion to suppress the gun and the testimony of the officer who found it, because "there was [*sic*] no articulable facts for the Police to stop the car and take the man out of the car."

The State's first contention on appeal is that the trial court erred when it reconsidered the pretrial denial of defendant's motions to quash arrest and suppress evidence. It relies upon the general rule that, in the absence of additional evidence or exceptional circumstances, collateral estoppel bars the relitigation of an order sustaining or denying a pretrial motion to suppress evidence, citing several cases which so hold. (*E.g., People v. Holland* (1974), 56 Ill. 2d 318, 307 N.E.2d 380; *People v. Hopkins* (1972), 52 Ill. 2d 1, 284 N.E.2d 283; *People v. Armstrong* (1973), 56 Ill. 2d 159, 306 N.E.2d 14; *People v. Eckmann* (1978), 60 Ill. App. 3d 300, 376 N.E.2d 751; *People v. Durruty* (1974), 18 Ill. App. 3d 335, 309 N.E.2d 802.) The State maintains that defendant presented no further evidence to the trial court and there existed no extraordinary circumstances which would impel the trial court to reconsider defendant's motions. The fact that defendant had discovered a new case did not constitute "extraordinary circumstances"

since *People v. Barnes* was filed March 21, 1979, three months prior to the suppression hearing, and rehearing on that case was denied April 20, 1979. Furthermore, the State asserts, the fact that defendant has merely discovered a new argument does not suspend the doctrine of collateral estoppel, citing *People v. Colletti* (1978), 61 Ill. App. 3d 289, 291-92, 377 N.E.2d 1276.

Defendant attempts to distinguish between the situation where defendant's initial motion is denied and his subsequent motion is granted by another court, as in this case, and the situation where the initial motion is denied and the subsequent motion is also denied. Defendant claims this distinction was observed in *People v. Holland*. In fact, the court in *Holland* distinguished between the situation where defendant's motion was originally granted, and subsequently sought to be reviewed and denied by the trial court, as in *People v. Taylor* (1971), 50 Ill. 2d 136, 277 N.E.2d 878, and facts such as occurred in the instant case, where defendant's initial motion is denied in a suppression hearing, and is subsequently granted by another court, as in *People v. Hopkins* and *People v. Armstrong*. In the situation presented by the facts in the *Taylor* situation, the State is permitted to appeal the granting of defendant's motion, but a subsequent court, *e.g.*, the trial court, may not review the first order and deny defendant's motion. In a situation such as that in the instant case, the trial court may review the initial order denying defendant's motion, but only if there is a showing of exceptional circumstances or new evidence. There has been no such showing here. In the absence of a mistake in law, the motion judge, having heard the testimony of witnesses *ab initio*, and having observed their demeanor while testifying, was in the best position to determine wherein the truth lay, rather than the subsequent court simply reading from a cold transcript. *People v. Armstrong* (1973), 56 Ill. 2d 159, 161.

Furthermore, the record well supports the initial decision to deny defendant's motions. The State argues that the police were justified in stopping, frisking, and arresting defendant because their conduct under the circumstances met the standards of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Those standards have been codified in Illinois. (Ill. Rev. Stat. 1977, ch. 38, pars. 107—14, 108—1.01.) Section 107—14 allows a police officer to stop and question an individual he reasonably believes had committed or is about to commit a criminal offense. The State correctly contends that in the instant case, the field stop was reasonable where the suspect's description received by the police over the radio transmission matched defendant's description in that he was a black male wearing dark clothing; the vehicle description fit the car defendant was driving; and the license number was traced to that car. The State claims that Reverend Nelson's evidence did not contradict his son's

since it did not exclude the possibility that defendant had removed the gun from the trunk of the car and placed it in his pocket out of his father's presence. We agree.

In support of its contention that the stop was justified, the State also relies upon several recent Illinois cases. In *People v. Moore* (1977), 55 Ill. App. 3d 706, 710-11, 371 N.E.2d 194, the court found that police had reasonable cause to stop a black defendant driving an orange Vega, where the suspect was seen driving a similar car, and "not too many cars of a similar description were driven by black men in the area." In *People v. Gunderson* (1978), 66 Ill. App. 3d 516, 383 N.E.2d 1296, this court found the police justified in stopping a defendant's car, where they had notice of an armed robbery, the car was traveling from the scene, and one occupant of the car matched a description of the suspect. In *People v. Fulton* (1979), 68 Ill. App. 3d 915, 386 N.E.2d 605, a stop was justified where the police had a description of the getaway car used in an armed robbery, and the defendant had stopped his car near the home of another suspect. In *People v. Barnes*, relied upon by defendant before the trial court, the police were deemed unjustified in stopping a car which was not speeding, did not remotely match the broadcast description of the suspect's car, and the number of and apparel worn by occupants of the car described in the broadcast did not resemble that of the suspects being stopped. Justification in frisking defendant may also be found in section 108—1.01 of the Code of Criminal Procedure of 1963, which authorizes an officer who has made a stop pursuant to section 107—14 to search the suspect for weapons if he reasonably suspects he is in danger of attack. The police here were alerted to suspects who participated in an armed robbery. See *People v. Lee* (1971), 48 Ill. 2d 272, 269 N.E.2d 488.

Under these facts, the trial court erred in concluding that the arrest was made without probable cause (*People v. Jackson* (1979), 77 Ill. App. 3d 117, 395 N.E.2d 976) or that an illegal search had taken place (*People v. Berg* (1977), 67 Ill. 2d 65, 364 N.E.2d 880). For these reasons the cause must be reversed and remanded for trial.

Reversed and remanded.

DOWNING and PERLIN, JJ., concur.