NO. 4-99-0551

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

JACKIE WILLIAMSON,

          Defendant-Appellant.

)

)

)

)

)

)

)

)

     Appeal from

     Circuit Court of 

     Ford County

     No. 98CF66

     Honorable

     Stephen R. Pacey,

     Judge Presiding.

_________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In November 1998, the State charged defendant, Jackie Williamson, with burglary and criminal damage to property over $300.  720 ILCS 5/19-1(a), 21-1(1)(a) (West 1998).  At the State's request, the trial court dismissed the criminal damage to property charge.  In March 1999, a jury found defendant guilty of burglary.  In April 1999, the trial court denied defendant's posttrial motion; sentenced defendant to 15 years' imprisonment, to run consecutively to the sentence in another case (People v. Williamson, No. 98-CF-1441 (Cir. Ct. Will Co.)); ordered him to pay a $1,000 public defender fee, $600 court costs, and $2,000 restitution to Birkey's Farm Store (Birkey's); and directed the Department of Corrections (DOC) to withhold 50% of defendant's monthly corrections income to apply to the aforementioned costs and fees. 

On appeal, defendant argues that (1) the trial court erred in not suppressing evidence obtained during an illegal search; (2) he was denied effective assistance of counsel; (3) the trial court erred in not holding a hearing on defendant's ability to pay public defender fees; (4) the trial court erred when it ordered DOC to withhold 50% of any income defendant earned while imprisoned to satisfy restitution and costs; and (5) the discretionary consecutive sentencing provision of section 5-8-4(b) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5-8-4(b) (West 1998)) violates defendant's rights to due process and trial by jury.  We affirm defendant's conviction and consecutive sentence, vacate the DOC wages withholding order, vacate the recoupment order for a hearing thereon, and remand.

I. BACKGROUND

On November 2, 1998, Officer Howard Curry of the Gibson City police department was performing routine checks of local businesses and churches.  At approximately 1 a.m., Curry noticed that one of the bay doors of Birkey's was ripped from its hinges and immediately called for another unit.  When Officer Christopher Decker arrived, the two officers searched the building and found that one of the office windows had been broken, the cash register had been pried open, and computer disks were scattered around the floor.  At that point, the police contacted James Faker, general manager of Birkey's.  Faker noticed that several items were missing, including Birkey's pickup.

Officer Boyd Headrick also arrived on the scene to assist in the burglary investigation.  As he patrolled the area around Birkey's, Headrick noticed a silver 1985 Cadillac without any license plates parked north of Birkey's.  Upon examining the vehicle, Headrick noticed the vehicle identification number did not match the license-applied-for sticker on the vehicle.  He then called a wrecker service to have the car removed from the scene, and, as he was waiting for the wrecker service, the missing Birkey's pickup pulled into a nearby driveway.  Headrick pulled his squad car into the driveway behind the pickup.  As he exited his squad car, a man jumped out of the truck and ran.  Headrick chased the man on foot but was unable to catch him.  

At trial, Headrick testified that the fleeing man was of Mexican descent and wearing a large bulky-type plaid jacket.  Curry testified that, on the night of the incident, Headrick reported that the suspect was a Mexican male wearing a red-checked coat.  Decker testified that Headrick reported that the suspect was wearing a dark-colored, puffy-looking coat with dark-colored pants. 

The officers called for a canine unit to assist in the search for the suspect.  Officer Kurtis Buckley, with the trained canine, and Decker searched the area for two hours in the cold, wet weather.  The officers ended up at a farmhouse where they terminated their unsuccessful search.

About an hour and a half later, the officers received a sheriff's report that a black male was walking westbound on a rural road about four miles west of the farmhouse where the officers had terminated their unsuccessful search.  The report came from a school bus driver who had observed defendant trying to get into a shed and thought that was "odd and strange."  Headrick, Buckley, and Decker then proceeded to the location and found defendant on foot.  

At trial, Decker testified that, when he first saw defendant, defendant was in a roadway and no vehicles were around.  The nearest building was a farmhouse located an eighth of a mile away.  Defendant was moving toward the farmhouse and surrounding buildings.  His clothing was wet, muddy, and covered with cockleburs.  Headrick testified that he recognized the plaid on the inside of defendant's jacket as the plaid that he had seen earlier on the man fleeing the Birkey's pickup.

The officers stopped defendant.  Decker asked defendant his name and address, arrested him, and conducted a pat-down search of defendant to make sure that defendant had no weapons.  The record is unclear as to the order of the arrest and pat-down search of defendant.  During the pat down, Office Decker felt and removed a Swiss army knife, which had keys and a watch attached to it by a chain.  After obtaining a search warrant for the car, the officers determined that the keys belonged to the Cadillac found parked near Birkey's.  Decker processed the Cadillac and discovered documents bearing defendant's name inside.

Michael Trummel, a crime-scene investigator with the Illinois State Police, processed the crime scene and the stolen pickup.  He obtained shoe prints from the crime scene, one of which was on a manila envelope on the floor of Birkey's interior premises.  Trummel sent all of the evidence to the Illinois State Police crime lab.  At trial, Thomas Gamboe, Illinois State Police forensic scientist, explained footwear-impression analysis and testified that, based on that analysis, he found a match between the footprint left at the crime scene and the left shoe that defendant was wearing when the officers apprehended him.    

At trial, defense counsel objected to Decker's testimony regarding the keys obtained during the pat-down search.  The following dialogue took place:  

"[PROSECUTOR]:  Okay. What, if anything, did you do with those keys?

[DEFENSE COUNSEL]: [I am] going to object.  I [do not] believe that [he is] entitled to testify about the keys in this particular case, your Honor.

* * *

[THE COURT]:  We are resumed out of the presence of the jury.  [Defense Counsel], your objection.

[DEFENSE COUNSEL]:  I think this is [an] illegal search, your Honor, because the only description [we have] heard about defendant is that [he is] a Hispanic.  [Defendant] is obviously not Hispanic; he is obviously black[.] [T]herefore[,] the taking of the keys is the fruit of the poisonous tree so to speak[,] and [the State] should not be allowed to go into this.

* * *

[PROSECUTOR]:  Your Honor, this is the most routine of pat[-]down searches.  This was either--this was done pursuant to his arrest and all of the circumstances in this case; the burglary had been committed, a person had fled, this person matched to some extent the description obtained by officers conducting the investigation in this case, was found a short distance away[;] after a pat[-]down search was conducted for weapons, the keys were obtained, and this is a reasonable extension of the investigation of this matter.  [The keys are] evidence, and they were properly taken into evidence.

* * *

[DEFENSE COUNSEL]:  At this point the officers are basically taking a guy into custody because [he is] the wrong color in the wrong town at the wrong time.  This is some five miles away from the place where the burglary took place, and [he does not] answer the description of the person that has been identified as a Hispanic male.

[THE COURT]:  Well, [defense counsel], we [have not] heard anything about the condition or what other observations this officer made about [defendant], but he was on foot some distance from the location.  I guess by reference to a bus driver we can infer that [it is] rural.  And at this point all [I have] heard is that there was a pat down for protection of the officer, and he discovered some keys.  And on that basis I [do not] think [there is] any reason to suppress what [we have] heard thus far.  There may be some additional foundation the State wants to lay here."  

When the prosecutor later asked Decker what he did with the keys, defense counsel objected, the trial court overruled the objection, and Decker testified that he used the keys to open the Cadillac to look for evidence of the crime at Birkey's.  The jury found defendant guilty of burglary.

In April 1999, defendant filed a posttrial motion, alleging in part that "[t]he [c]ourt erred in denying the [m]otion to [s]uppress evidence that the keys in defendant[']s pocket fit the Cadillac automobile."  The trial court denied defendant's posttrial motion and sentenced defendant as stated. This appeal followed.   

II. ANALYSIS

A. Motion To Suppress

Defendant first contends that the trial court erred in denying his motion to suppress the keys obtained during a search of his person.  The trial court's ruling on a motion to suppress is generally entitled to great deference, and this court will not disturb it on review unless it is against the manifest weight of the evidence.  
People v. Smith
, 315 Ill. App. 3d 772, 775, 734 N.E.2d 1039, 1041 (2000).

The State asserts that defendant has forfeited this issue because the grounds raised in his posttrial motion differ from his argument at trial.  We disagree.  At trial, defense counsel argued that the keys should be suppressed because they were seized as the result of an illegal search.  In his posttrial motion, defendant asserted that the trial court erred in denying his motion to suppress.  We find that defendant's assertion of error in his posttrial motion sufficed to preserve this issue for appeal. 

Here, the officers stopped defendant, asked him his name and address, and then arrested him.  The facts are unclear as to whether defendant was searched before or after his arrest.  Defendant contends the seizure of the keys was the result of a stop and frisk prior to the arrest.  Conversely, the State argues the seizure was the result of a search incident to arrest.  However, the real issue here is whether probable cause to arrest defendant existed when the officers searched him because, if it did, the search is justified as a search incident to the arrest.  
People v. Miller
, 212 Ill. App. 3d 195,
 200, 570 N.E.2d 1202, 1206 (1991).  A search may be conducted immediately prior to the arrest and need not take place after it.  
People v. Boyd
, 298 Ill. App. 3d 1118, 1125, 700 N.E.2d 444, 449 (1998), citing 
Rawlings v. Kentucky
, 448 U.S. 98, 111 & n.6, 65 L. Ed. 2d 633, 645-46 & n.6, 100 S. Ct. 2556, 2564 & n.6 (1980).  

A police officer can make a warrantless arrest when "[h]e has reasonable grounds to believe that the person is committing or has committed an offense."  725 ILCS 5/107-2(1)(c) (West 1998).  As used in the statute, "reasonable grounds" is synonymous with "probable cause."  
People v. Smith
, 222 Ill. App. 3d 473, 478, 584 N.E.2d 211, 215 (1991).  In determining if probable cause exists, the trial court must decide whether "'a reasonable and prudent [person], having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.'"  
People v. Tisler
, 103 Ill. 2d 226, 237, 469 N.E.2d 147, 153 (1984), quoting 
People v. Wright
, 41 Ill. 2d 170, 174, 242 N.E.2d 180, 183 (1968).  Probable cause need not be based on evidence sufficient to convict (
People v. Neal
, 111 Ill. 2d 180, 193, 489 N.E.2d 845, 849 (1985)), and the calculation concerns the probability of criminal activity and not proof beyond a reasonable doubt (
People v. House
, 141 Ill. 2d 323, 370, 566 N.E.2d 259, 280 (1990)).  In determining probable cause, police may consider as relevant the closeness in geographic location and time between crime and arrest.  
People v. McCleary
, 208 Ill. App. 3d 466, 478, 567 N.E.2d 434, 441 (1990).

Defendant argues that the police lacked probable cause to arrest him because a general description of a defendant is insufficient to support probable cause.  See 
People v. Barnes
, 70 Ill. App. 3d 566, 569, 388 N.E.2d 869, 871 (1979) 
("'a general description is insufficient to provide the probable cause necessary to justify an arrest unless it is supported by other relative facts and circumstances known to the arresting officer.'  (
In re Woods
, 20 Ill. App. 3d 641, 646, 314 N.E.2d 606[, 609 (1974)]").  However, unlike the cases cited by defendant, the officer that witnessed the suspect fleeing and gave the general description was one of the officers who apprehended defendant.  At trial, the officer testified that he recognized the plaid on the inside of defendant's jacket.

When the officers arrested defendant, they knew the following:  a business had been burglarized and a pickup stolen; a man was seen driving the stolen pickup; the man took flight in a rural area on a rainy night when he saw police; defendant was located about four hours later and five miles away from the scene of the burglary; the officer who witnessed the man's flight from the crime scene earlier identified defendant as the man who fled; and defendant was wet, muddy, and covered with cockleburs.  Based upon these facts known to police at the time of defendant's arrest, probable cause existed to believe a crime was committed and defendant committed the crime.  Accordingly, we find the trial court's ruling on the motion to suppress was not against the manifest weight of the evidence.

B. Ineffective Assistance of Counsel

Defendant next argues that he was denied effective assistance of counsel because his trial counsel did not file a motion to quash his arrest and suppress evidence of his clothing and shoes seized after the arrest.  
Ineffective assistance of counsel claims are reviewed under the standard set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984).  
People v. Evans
, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999).
  To obtain reversal under 
Strickland
, a defendant must prove that (1) his counsel's performance failed to meet an objective standard of competence, and (2) counsel's deficient performance resulted in prejudice to the defendant.  
Evans
, 186 Ill. 2d at 93, 708 N.E.2d at 1163.
  The 
Strickland
 court noted that, when a case is more easily decided on the ground of lack of
 sufficient prejudice, rather than that counsel's representation was constitutionally deficient, the court should do so.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069.

Since the officers had probable cause to arrest defendant, the arrest was legal, and a motion to quash the arrest and suppress evidence would have been denied.  Accordingly, defendant cannot show prejudice as required by 
Strickland
 to succeed on this ineffective assistance of counsel claim.

In the alternative, defendant argues the failure to suppress the shoes that he was wearing when arrested is plain error.  We disagree.  Police may reasonably search and/or seize, without a warrant, the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station incident to booking and jailing the suspect.  
People v. Hadley
, 179 Ill. App. 3d 152, 155, 534 N.E.2d 395, 397 (1989), citing 
Illinois v. Lafayette
, 462 U.S. 640, 643, 77 L. Ed. 2d 65, 69, 103 S. Ct. 2605, 2608 (1983).  Here, defendant's shoes were evidently seized because of a shoe print found on an envelope in the interior of the crime scene.  Because defendant was lawfully arrested when his shoes were seized, no error occurred by not suppressing the shoes.  Absent error, plain error cannot exist.        C. Recoupment Order for Public Defender Fees

Defendant also argues that the trial court erred in not holding a hearing on defendant's ability to pay public defender fees before ordering him to pay.  While the State agrees the court did not strictly comply with the statute and case law, the State requests that we remand the cause for a new recoupment hearing.  Defendant asserts that the State is time-barred from requesting such a hearing because section 113-3.1(a) of the Code of Criminal Procedure of 1963 (Procedure Code) (725 ILCS 5/113-3.1(a) (West 1998)) provides that a trial court must hold a recoupment hearing within 90 days after the entry of a final order disposing of the case at the trial court level.  We disagree.

Here, the trial court held a recoupment hearing within the 90-day period.  However, because the hearing did not comply with other provisions of section 113-3.1(a), we vacate that portion of the trial court's sentencing order requiring defendant to pay $1,000 in appointed counsel's fees and remand the cause for a hearing pursuant to section 113-3.1 of the Procedure Code.  See 
People v. Love
, 177 Ill. 2d 550, 565, 687 N.E.2d 32, 39 (1997).

D. Wage Withholding Order

Next, defendant argues that the trial court exceeded its authority when it ordered DOC to withhold 50% of defendant's monthly corrections income and remit it to the Ford County circuit clerk to satisfy restitution and court costs.  The State concedes this issue, and we agree.  No authority exists for a trial court to direct DOC to withhold wages earned while a defendant is imprisoned.  See 
People v. Watson
, 318 Ill. App. 3d 140, 142-43, ___ N.E.2d ___, ___ (2000).  Accordingly, the part of the trial court's sentencing order directing DOC to withhold defendant's corrections wages is void, and we vacate it.

E. Consecutive Sentencing

Finally, defendant argues that section 5-8-4(b) of the Unified Code violates his rights to due process and a jury trial under the United States Supreme Court's decision in 
Apprendi v. New Jersey
, 530 U.S. ___, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  We review the constitutionality of a statute 
de
 
novo
.  
People v. Fisher
, 184 Ill. 2d 441, 448, 705 N.E.2d 67, 71-72 (1998).  
The applicability of 
Apprendi
 is a pure question of law.  
United States v. Shepard
, 235 F.3d 1295, 1296 (11th Cir. 2000). 

The trial court may, in its discretion, impose consecutive sentences pursuant to section 5-8-4(b) if it believes that such sentences are necessary to protect the public.  Section 5-8-4(b) provides:

"The court shall not impose a consecutive sentence except as provided for in subsection (a) unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record ***."  730 ILCS 5/5-8-4(b) (West 1998).

Defendant argues that the imposition of consecutive sentences offends the principles outlined in 
Apprendi
.  The State counters, arguing that, by its own terms, 
Apprendi
 does not apply to consecutive sentences imposed under section 5-8-4(b).  We agree with the State and find section 5-8-4(b) constitutional.  

In 
Apprendi
, a New Jersey statute provided that the possession of a firearm for an unlawful purpose was a "second-degree" offense, punishable by a 5- to 10-year prison sentence.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.  Another statute, described as a "hate crime" law, provided for an extended term of imprisonment if the trial judge found, by a preponderance of the evidence, that "'[t]he defendant in committing the crime acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation[,] or ethnicity.'"  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351, quoting N.J. Stat. Ann. §2C:44-3(e) (West Supp. 2000).  This "hate crime" statute extended the sentence for a second-degree offense to a 10- to 20-year prison term upon a trial judge's finding that defendant was motivated by racial bias.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.  Therefore, under that particular New Jersey statute, the trial judge unilaterally and automatically heard all evidence of whether the defendant was motivated by bias and entered correlating factual findings based upon his evaluation under a preponderance of the evidence standard, potentially doubling the maximum sentence available.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 443, 120 S. Ct. at 2352.

The United States Supreme Court found the "hate crime" statute unconstitutional.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 456, 120 S. Ct. at 2363.  
The Court held that the fifth and fourteenth amendments to the United States Constitution (U.S. Const., amends. V, XIV) require that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.  

Apprendi
 noted its applicability only to situations in which the trial judge is charged by statute to enter additional factual findings so integral to the charged offense that they are "elemental" in nature and not merely sentencing factors.  
Apprendi
, 530 U.S. at ___, ___, 147 L. Ed. 2d at 455, 457 & n.19, 120 S. Ct. at 2362-63, 2365 & n.19.  A sentencing factor is typically considered a factor that "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty; it operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it."  
McMillan v. Pennsylvania
, 477 U.S. 79, 87-88, 91 L. Ed. 2d 67, 77, 106 S. Ct. 2411, 2417 (1986).  Moreover, 
Apprendi
 explained that a "sentencing factor" describes a circumstance that supports a specific sentence within the statutory range for the particular offense, while an "element" or "sentence enhancement" describes an increase beyond the maximum authorized statutory sentence.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19.  This distinction is important because judicial discretion in imposing a sentence 
within
 
a
 
statutory
 
range
 has long been accepted in this country.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. at 449, 120 S. Ct. at 2358.  We find that section 5-8-4(b) has many of the common indicia of sentencing provisions.

First, the language of section 5-8-4(b) plainly identifies it as a sentencing provision.  See 
Jones v. United States
, 526 U.S. 227, 232-34, 143 L. Ed. 2d 311, 319-20, 119 S. Ct. 1215, 1219-20 (1999).  Section 5-8-4(b) applies only after "multiple sentences of imprisonment [have been] imposed on a defendant."  730 ILCS 5/5-8-4(b) (West 1998).  Therefore, 
section
 
5-8-4(b)
 
does
 
not
 
affect
 
the
 
length
 
of
 
the
 
underlying
 
sentence
; 
this
 
section
 
indicates
 
only
 
the
 
manner
 
in
 
which
 
the
 
previously
 
imposed
 
sentences
 
must
 
be
 
served
.

Second, section 5-8-4(b) addresses special features of the manner in which the basic crime was carried out, features identified as traditional sentencing factors.  
Castillo v. United States
, 530 U.S. ___, ___, 147 L. Ed. 2d 94, 100, 120 S. Ct. 2090, 2093-94 (2000); accord 
Almendarez-Torres v. United States
, 523 U.S. 224, 243, 140 L. Ed. 2d 350, 368, 118 S. Ct. 1219, 1230 (1998).  Under section 5-8-4(b), a trial court imposes consecutive sentences based on a finding that such a term is required to protect the public, which directly relates to how defendant carried out the crime, typical of and consistent with traditional sentencing factors within the province of trial judges.

Third, the title of section 5-8-4, "Concurrent and Consecutive Terms of Imprisonment," identifies it as a sentencing provision.  See 
Almendarez-Torres
, 523 U.S. at 234, 140 L. Ed. 2d at 361-62, 118 S. Ct. at 1226.  Taken together, these factors indicate the nature of section 5-8-4(b) findings as being more akin to sentencing factors than elements of an offense.

The 
Apprendi
 Court ultimately concluded, however, that it did not matter whether the required finding is characterized as an element or a sentencing factor, because "[l]abels do not afford an acceptable answer."  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365, quoting 159 N.J. 7, 20, 731 A.2d 485, 492 (1999).  The 
Apprendi
 Court stated that, despite what may appear to be a clear indication of the nature of the factor involved, "the relevant inquiry is one not of form, but of effect--does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.  Therefore, 
Apprendi
 found that the 
sine
 
qua
 
non
 for differentiating between elements of a crime, 
i.e.
, those requiring specific constitutional protections under 
Apprendi
, and sentencing factors was whether a particular finding served to increase the sentencing range for a defendant's underlying conviction.

Disagreement exists 
as to the 
Apprendi
 Court's meaning of an "increase [in] the prescribed range of penalties."  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363.  In the case at bar, defendant implicitly argues that the "increase" to which 
Apprendi
 refers includes the greater actual number of years to be served in prison resulting from the imposition of consecutive sentences.  We find that the 
Apprendi
 opinion does not support defendant's argument.

The 
Apprendi
 decision clearly states that the Court was concerned only with increases in 
a sentencing range for a single conviction, 
i.e.
, the conviction for which the State sought an enhanced sentence.  
Apprendi
 
focused solely upon the increase in the sentencing range for a particular offense and not the aggregate years of imprisonment to be served as a result of a trial court's imposing consecutive sentences.  
The Court itself recognized that the defendant in 
Apprendi
 could have received consecutive sentences.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 445, 120 S. Ct. at 2354.  Consequently, 
the cumulative effect of a defendant's sentences, including consecutive sentences, is irrelevant under 
Apprendi
.

Other courts have also interpreted 
Apprendi
 as applying only to increases in penalty beyond the statutory sentencing range for a single offense.  In 
United States v. Jones
, 235 F.3d 1231, 1238 (10th Cir. 2000), the court stated that the relevant inquiry under 
Apprendi
 "is the constitutionality of the sentence imposed 
on
 
each
 
individual
 
count
 
charged
 in the indictment, 
irrespective
 
of
 
the
 
potential
 
total
 
sentence
 
achievable
 
through
 
the
 
imposition
 
of
 
valid
 
consecutive
 
sentences
."  (Emphasis added.)  See also 
United States v. Hishaw
, 235 F.3d 565, 577 (10th Cir. 2000) (holding that "as long as the defendant's sentence falls within the maximum established by statute," 
Apprendi
 is not applicable); 
United States v. Angle
, 230 F.3d 113, 121 (4th Cir. 2000) (holding that "sentencing factors that support a specific sentence within the statutorily prescribed penalty range are still properly submitted to a judge to be found by a preponderance of the evidence"); 
Talbott v. Indiana
, 226 F.3d 866, 869-70 (7th Cir. 2000) (holding that, even after 
Apprendi
, the judge alone determines certain facts when imposing sentences short of the statutory maximum); 
United States v. Meshack
, 225 F.3d 556, 576-77 (5th Cir. 2000) (holding that, as long as a defendant's sentence is within the statutory sentencing range, 
Apprendi
 does not prohibit application of a sentencing enhancement that causes a defendant to receive a higher sentence); 
United States v. Aguayo-Delgado
, 220 F.3d 926, 933-34 (8th Cir. 2000) (same), 
cert
. 
denied
, ___ U.S. ___, 148 L. Ed. 2d 513, 121 S. Ct. 600 (2000).  
We, therefore, find that 
Apprendi
 is inapplicable to the imposition of consecutive sentences under section 5-8-4(b) even when the aggregate number of years of imprisonment imposed through consecutive sentences exceeds the maximum statutory range for one or more of the individual crimes.

Moreover, unlike the statute in 
Apprendi
, section 5-8-4(b) does not actually increase any of defendant's sentences.  Instead, section 5-8-4(b) merely provides the manner in which a trial court may order defendant's sentences within the statutory ranges to be served.  730 ILCS 5/5-8-4(b) (West 1998); see also 
People v. Primm
, No. 1-97-3685 (December 29, 2000), slip op. at 26, ___ Ill. App. 3d ___, ___, ___ N.E.2d ___, ___ (consecutive sentencing affects only the manner in which each sentence is to be served and has nothing to do with the length of each sentence).

The Supreme Court of Illinois has previously found that the imposition of consecutive sentences was not an increase in penalty.  
People v. Wendt
, 163 Ill. 2d 346, 355, 645 N.E.2d 179, 183 (1994).  In
 
Wendt
, 163 Ill. 2d at 355, 645 N.E.2d at 183, the supreme court, referring to section 5-8-4, found that the trial court properly imposed three concurrent five-year prison terms for three separate drug charges and one consecutive probation sentence for a fourth drug charge.  
In so holding, the court stated that it "fail[ed] to see how a consecutive sentence *** imposed for a particular offense ha[d] the effect of increasing the penalty.  *** The sentence of probation was for a separate offense and did not increase the penalty for any of the [other] charges."  
Wendt
, 163 Ill. 2d at 355, 645 N.E.2d at 183; see also 
People v. Williams
, 284 Ill. App. 3d 681, 684, 672 N.E.2d 907, 909 (1996) (citing 
Wendt
 for proposition that consecutive sentences do not increase penalty for any individual charges), 
rev'd
, 179 Ill. 2d 331, 334-35, 688 N.E.2d 1153, 1155 (1997) (reversing the appellate court's decision solely because of factual distinctions between 
Wendt
 and 
Williams
, yet 
reaffirming 
Wendt
 and clarifying that consecutive sentences for multiple offenses are not increases in penalty).  
Therefore, because consecutive sentences under section 5-8-4 do not constitute an increase in penalty, section 5-8-4 falls outside the scope of 
Apprendi
.

Additionally, section 5-8-4 does not increase the class of the offense, a point of concern in 
Apprendi
.  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 457-58, 120 S. Ct. at 2365.
  In the present case, the classification of each of the offenses for which defendant was convicted did not change as a result of the trial court's imposing consecutive sentences.  Therefore, the concern in 
Apprendi
 is neither present nor relevant to our case.

Moreover, the imposition of consecutive sentences has historically been within the discretion of the trial court.  See 
People v. Vraniak
, 5 Ill. 2d 384, 386, 125 N.E.2d 513, 515 (1955).  The 
Apprendi
 Court specifically stated:

"We should be clear that nothing in this history suggests that it is impermissible for judges to exercise discretion--taking into consideration various factors relating both to offense and offender--in imposing a judgment within the range prescribed by statute.  We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case."   (Emphasis omitted.)  
Apprendi
, 530 U.S. at ___, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358.  

Further, the judicial finding required by section 5-8-4(b) does not usurp any power from the jury.
  Therefore, the imposition of consecutive sentences under section 5-8-4(b) is within the exclusive province of the trial court, and 
Apprendi
 does not apply.  The 
Apprendi
 decision does not render section 5-8-4(b) unconstitutional.

III. CONCLUSION

Accordingly, we affirm defendant's conviction and consecutive sentence, vacate the DOC wage withholding order, vacate the recoupment order, and remand for a hearing thereon.

Affirmed in part and vacated in part; cause remanded.

STEIGMANN, P.J., and COOK, J., concur.