(text box: 1)
 NO. 5-00-0315

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Marion County.

)

)  No. 00-CF-15

)

ANTONIO TORRES, )  Honorable

)  Patrick J. Hitpas,

     Defendant-Appellant. )  Judge, presiding.

________________________________________________________________________

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Antonio Torres (defendant) was charged by an amended information on April 6, 2000, with residential burglary and burglary.  Following a jury trial, he was convicted of residential burglary.  Defendant was sentenced to six years in the Department of Corrections (Department).  Defendant appeals.

William and Kelly Snell and their three children lived in a mobile home at No. 54 Richmond Heights in Central City, Illinois.  On January 12, 2000, while William was attempting to light the pilot light on the hot water heater, a fire occurred.  The interior of the mobile home sustained smoke, water, and heat damage, and the siding on the exterior melted due to the heat.  When the Snells left their home at approximately 7 p.m., the utilities were turned off due to the fire and they did not take anything with them.  They locked the back door, and the window was intact.  At that time, the Snells planned to return to the mobile home to live, but they never spent another night at the trailer, due to the extent of the damage.  An insurance claim was filed and the trailer was considered totaled.

Later that same evening, the Snells were told by the police that someone had broken into their burned trailer.  When the Snells arrived, they noticed that the back door to the trailer was open and that the back window was broken.  The Snells determined that a pair of jeans, a short-sleeved, black shirt, and cologne were missing.  The Snells both knew defendant, but neither of them knew John Vinson.  Regardless, neither of the men had permission to enter the mobile home and take anything out of it.  After the Snells learned that their home had been broken into, they removed their VCR and a PlayStation.  After they determined that the trailer was totaled, they returned several times to retrieve the remainder of their belongings.

Jesse Cummins lived at No. 22 Richmond Heights in Central City, Illinois, on the date of the fire.  On January 12, 2000, Cummins, defendant, and a friend were at John Vinson's trailer, No. 8 Richmond Heights, in Central City, Illinois.  Defendant and Vinson were planning to go to Huck's for soda and cigarettes.  While Vinson was in the bathroom, defendant told Cummins and his friend that he and Vinson were going to see how badly the Snells' trailer was damaged.  Cummins had been to the Snells' trailer earlier in the evening while it was burning.

When Vinson testified, he admitted that he had twice been convicted of theft.  Vinson stated that at the time of the burglary of the Snells' trailer, he was on parole for grand theft auto and theft over $300.  Vinson admitted that he had pleaded guilty to the burglary of the burned trailer.  He had not been sentenced at the time of the trial in this case, and he did not have a sentencing agreement.  Vinson said that he and defendant had the idea to break into the Snells' trailer as "an easy way to make money."  Vinson claimed that he reached through a broken-out window in the back of the trailer and unlocked the back door.  When Vinson and defendant entered the trailer, there was no electricity.  Vinson used a cigarette lighter to see.  Vinson claimed that he saw defendant take a black shirt that zipped up the front with long sleeves.  When Vinson and defendant entered the living room, they noticed that some people had spotted them in the trailer.  They ran out the back door and through the cemetery.  When they reached the main road, they split up and met each other approximately 20 to 30 minutes later.

Vinson admitted that he made two statements to the police.  Defendant's exhibit 7, Vinson's first statement, is in his own handwriting and does not mention that defendant took a shirt.  Approximately eight hours later, Vinson made a second statement, defendant's exhibit 8.  In the second statement, Vinson stated that defendant had taken a shirt.  Vinson claimed that the second statement was merely a clarification of the first statement and that he had failed to include everything in the first statement.

Vinson spoke with defense counsel and an investigator, Kevin McClain, on the Saturday prior to the trial.  At that time, Vinson stated that he did not see defendant take anything from the trailer.  Vinson told defense counsel and McClain that the only reason that he said that defendant had taken the shirt was because Officer Berger threatened to put Vinson back in prison.  At the trial, Vinson admitted that he had lied to defense counsel and McClain on the Saturday prior to the trial.  Vinson testified that he saw defendant take the shirt from the Snells' trailer.  Vinson also admitted that Berger had not threatened him.  Vinson clarified that a state agent told him that he could get up to five years' imprisonment if he lied while giving his testimony.

Shawn Richards, a Central City police officer, testified that on January 12, 2000, at approximately 8:30 p.m., he received a report of a burglary at No. 54 Richmond Heights in Central City, Illinois.  Richards met with the Snells at their trailer that evening.  The Snells told Richards that their trailer had been broken into through the back door.  They told Richards that a black shirt and blue jeans were missing.  It was not until Richards' second meeting with Vinson that he let Vinson know that clothing was missing from the Snells' trailer.  Richards did not give Vinson a description of what was missing.  Vinson's description of the shirt was similar to the description given by William Snell.

The jury received guilty and not-guilty verdicts on residential burglary and burglary.  The jury returned a verdict of guilty of residential burglary and not guilty of burglary.  Defendant was later sentenced to six years' imprisonment.  The written sentencing order was entered on May 18, 2000, and states, 
inter alia
, as follows: "IT IS FURTHER ORDERED that the Illinois Department of Corrections is ordered to withhold fifty per[]cent (50%) of the inmate's monthly Corrections income and remit that amount to the Marion County Circuit Clerk for application to amounts due in this cause, for a total amount due of $123.00."  Defendant filed a timely notice of appeal.

Defendant contends that the State failed to prove beyond a reasonable doubt that the burned trailer was a dwelling place, a necessary element of residential burglary.  In a nutshell, defendant claims that because the Snells' residence could not be repaired, they could not, within a reasonable period of time, intend to reside there.  Hence, defendant claims that the fire-damaged residence was not a "dwelling" place of another under section 19-3 of the residential burglary statute (720 ILCS 5/19-3 (West 1998)) and that he should only have been found guilty of the mutually exclusive offense of burglary.  Defendant claims that because the evidence supported only a conviction for burglary and because the jury acquitted him of this charge, he should be completely exonerated for his unlawful acts.  We disagree.

On appeal, a criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt.  
People v. Anderson
, 188 Ill. 2d 384, 392, 721 N.E.2d 1121, 1125 (1999).  When a court on appeal reviews the sufficiency of the evidence to sustain a verdict, the relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  (Emphasis omitted.)  
Jackson v. Virginia
, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).  The standard of appellate review in a criminal case is one of great deference to the trier of fact, since it is not the function of the appellate court to retry the defendant.  
People v. Young
, 323 Ill. App. 3d 1078, 1088, 753 N.E.2d 1046, 1055 (2001).  Additionally, as a court of review, we do not reweigh the evidence or substitute our judgment for that of the trier of fact.  
People v. Penrod
, 316 Ill. App. 3d 713, 719, 737 N.E.2d 341, 348 (2000).

Pursuant to section 19-3 of the residential burglary statute, "[a] person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft."  720 ILCS 5/19-3 (West 1998).  By statute, the offenses of burglary and residential burglary are mutually exclusive.  See 720 ILCS 5/19-1 (West 1998).  The Illinois Supreme Court has also adopted this view.  
People v. Childress
, 158 Ill. 2d 275, 302, 633 N.E.2d 635, 647 (1994).  For purposes of the residential burglary statute, a "dwelling" is, 
inter alia
, a mobile home or trailer "in which at the time of the alleged offense the owners or occupants actually reside or in their absence intend within a reasonable period of time to reside."  720 ILCS 5/2-6(b) (West 1998). 

In 
People v. Walker
, 212 Ill. App. 3d 410, 412, 570 N.E.2d 1268, 1269 (1991), the house had been unoccupied for one year.  Two years prior to the burglary, the owner had been hospitalized as a result of congestive heart failure and the onset of Alzheimer's disease.  The owner went home for 11 months and, due to continuing health problems, eventually moved to a nursing home.  The defendants burglarized the owner's home and were convicted of residential burglary.  At the trial, the owner testified that he intended to return home.  The testimony showed that the doors were kept locked and that the home was secured.  On appeal, the defendants claimed that they could not be convicted of residential burglary because the premises in question were not a "dwelling."  This court disagreed and held that if the evidence is sufficient for the finder of fact to determine that an occupant or owner genuinely possessed the subjective intent to reside on the premises in question within a reasonable period of time, the premises are a "dwelling."  The statute does not require the intent to be realistic or reasonable.  "Reasonable," as used in the statute, applies only to the period of time in which the owner-occupier intends to go and reside, not the intent itself.  
Walker
, 212 Ill. App. 3d at 412-13, 570 N.E.2d at 1270.  The residential burglary statute applies to structures 
intended
 to be used as residences, regardless of whether the structure was actively being used as a residence at the time the burglary was committed.  
People v. Suane
, 164 Ill. App. 3d 997, 1002, 518 N.E.2d 458, 461 (1987); see also 
People v. Sexton
, 118 Ill. App. 3d 998, 455 N.E.2d 884 (1983) (the statute applied to the burglary of a house that was occupied only occasionally by the owner).  It was designed to protect the sanctity and the privacy of the home and to avoid the "greater danger and potential for serious harm from burglary of a home as opposed to burglary of a business."  
People v. Edgeston
, 243 Ill. App. 3d 1, 10, 611 N.E.2d 49, 56 (1993).

In the instant case, the burned mobile home was the Snells' dwelling place.  In fact, their departure from the residence was involuntary and due solely to the fire that occurred on the same evening as the theft.  There is no doubt that at the time that the Snells departed the residence, they intended to return.  Neither the trailer nor their personal belongings were abandoned.  They even locked the doors that evening in an effort to secure their personal belongings.  The Snells considered the mobile home to be their "home" and had no reason to believe that their residence could not be rehabilitated for future occupancy.

Defendant cites 
People v. Willard
, 303 Ill. App. 3d 231, 707 N.E.2d 1249 (1999), in support of his argument that the jury's verdict was not supported by the evidence.  The defendant in 
Willard
 had been convicted of burglary and contributing to the delinquency of a minor.  The defendant argued on appeal that the evidence at the trial established that he entered a dwelling in violation of the residential burglary statute; therefore, he claimed that he could not have committed the offense of burglary.  The building that the defendant entered had originally been a six-unit motel.  The owner had purchased land adjacent to that building and was planning to rehabilitate the building into four residential units and a laundry room, plus a residence for himself.  At the time of the burglary, the owner was not living in the building.  In fact, no one lived in the building.  On the date of the burglary, much of the drywall inside had been taken down, and one could see from one end of the building to the other on the inside.  The owner stated that the building was "really not a place to live in yet" on the date of the burglary.  
Willard
, 303 Ill. App. 3d at 323, 707 N.E.2d at 1250-51.

Defendant cites the following language from the 
Willard
 decision to support his argument that the burned trailer was not a dwelling place on the date of the burglary: " 'In their absence' implies that the building is habitable, but currently uninhabited, with a return to habitation planned shortly.  An uninhabitable building does not fall within this definition."  
Willard
, 303 Ill. App. 3d 235, 707 N.E.2d at 1251.  However, the 
Willard
 decision is distinguishable from the instant case.  Unlike 
Willard
, the mobile home in the instant case was the Snells' residence, and they considered it their home.  On the other hand, in 
Willard
, the residence was not yet habitable.  The 
Willard
 court discussed the problems with elevating to the status of a "dwelling place" any and all partially built homes that were not yet habitable.  This was a reasonable conclusion, considering the fact that one cannot reside in or be absent from a building that is not yet a residence.  The 
Willard
 court also determined that the entry into the owner's building did not implicate the concerns for privacy, the sanctity of a home, and the potential for serious harm that the residential burglary statute addresses.  
Willard
, 303 Ill. App. 3d at 234, 707 N.E.2d at 1251.

Here, the Snells had just left their residence due to a fire.  They left their personal belongings in the trailer, intending to return.  When they left, they had no idea that the trailer had been totaled.  In fact, they locked the doors to secure their personal belongings as if they were leaving for the evening.  Hence, we find defendant's reliance on 
Willard
 to be misplaced.

For the foregoing reasons, the evidence was sufficient for a rational jury to find that defendant broke into a "dwelling place" with the intent to commit a theft.  Hence, defendant's conviction for residential burglary was proper.

Next, defendant argues that the legislature has created "an unconstitutional statutory scheme by declaring residential burglary and burglary mutually exclusive offenses."

While it is true that the legislature has determined that burglary and residential burglary are to be considered mutually exclusive (720 ILCS 5/19-1 (West 1998)), defendant appears to claim that it is a violation of substantive due process and, hence, unconstitutional for the legislature to do so.  While it may seem curious that the legislature has created mutually exclusive offenses, it does not mean that the statutes are invalid and unconstitutional as defendant suggests.  It is well-established that the legislature, under its police power, has broad discretion to define offenses and prescribe penalties and aggravating factors for the offenses.  
People v. LaPointe
, 88 Ill. 2d 482, 500, 431 N.E.2d 344, 352 (1981).  In fact, it is proper for the legislature to define two separate offenses covering the same conduct.  
In re P.S.
, 147 Ill. App. 3d 707, 709, 498 N.E.2d 325, 327 (1986).  The legislature cannot, however, impose multiple punishments for a greater offense and a lesser-included offense when both involve a single physical act.  
People v. Davis
, 156 Ill. 2d 149, 160, 619 N.E.2d 750, 756 (1993).  This problem is not implicated when the legislature has carved out mutually exclusive offenses.

Statutes are presumed constitutional, and the party challenging a statute on constitutional grounds has the burden of clearly establishing its invalidity.  
People v. Jung
, 192 Ill. 2d 1, 4, 733 N.E.2d 1256, 1258 (2000).  When legislation does not affect a fundamental constitutional right, the test for determining whether it complies with substantive due process requirements is the rational basis test.  
People v. Hamm
, 149 Ill. 2d 201, 216, 595 N.E.2d 540, 546 (1992).  Pursuant to this test, a statute will be upheld "[w]hen [the] statute bears a reasonable relationship to a public interest to be served[] and the means adopted are a reasonable method of accomplishing the desired objective."  
People v. Adams
, 144 Ill. 2d 381, 390, 581 N.E.2d 637, 642 (1991).  In 
People v. Bales
, 108 Ill. 2d 182, 193, 483 N.E.2d 517, 522 (1985), the Illinois Supreme Court commented on the legislative history of the residential burglary statute and stated that it was enacted in order to deter the unlawful entry into dwelling places and, thus, to protect the privacy and sanctity of the home.

Residential burglary is a serious crime.  When a thief invades the privacy of one's home, a place where the owners (or renters) and their family expect to be relaxed, safe, and secure, they steal more than the possessions that they carry out the door.  There is a considerably greater chance of serious injury to persons when the home is violated than when the place violated is not used as a dwelling.  For these reasons, the legislature determined that the privacy and sanctity of a family's home are paramount.  The legislature, in exercising its police powers, made a determination that when a thief enters a "dwelling place," the penalties will be higher than when one burglarizes another type of building.  Since the State must show beyond a reasonable doubt that a dwelling place was involved in the crime, defendant suffers no unfair result.  This clearly satisfies the reasonable relationship test.  When the legislature defines two separate offenses covering the same conduct, then multiple punishments for a greater offense and a lesser-included offense are impermissible if only a single physical act is involved.  This problem is not implicated where the legislature has carved out mutually exclusive offenses (
Davis
, 156 Ill. 2d at 160, 619 N.E.2d at 756) as it has in the case at hand.

In 
People v. Bryant
, 128 Ill. 2d 448, 539 N.E.2d 1221 (1989), the Illinois Supreme Court rejected the appellate court's reasoning and vacated the defendant's conviction for possession of a stolen motor vehicle.  The appellate court had opined that because possession of a stolen motor vehicle is a lesser-included offense of theft yet is punished more severely, the statute was unconstitutional.  The Illinois Supreme Court acknowledged that possession of a stolen motor vehicle may have, at one time, been considered a lesser-included offense of theft.  The court, citing the legislature's police power and the increase in the severity of the penalty for possession of a stolen motor vehicle, held that the legislature intended to "distinguish possession of a stolen motor vehicle from theft in order to remedy the increasing frequency of the offense of possession of a stolen motor vehicle and its related activities."  
Bryant
, 128 Ill. 2d at 457-58, 539 N.E.2d at 1226.  The 
Bryant
 court went on to note that the steady increase in the penalty provision for possession of a stolen motor vehicle is indicative of the legislature's intent to make possession of a stolen motor vehicle a separate, more serious offense than theft, rather than a lesser-included offense of theft.  128 Ill. 2d at 457, 539 N.E.2d at 1225.

In light of defendant's argument that the legislature is constrained from labeling offenses as mutually exclusive, the 
Bryant
 decision is significant.  The Illinois Supreme Court found no constitutional infirmity in the legislature's creation of the distinct offense of possession of a stolen motor vehicle when such offense would logically be a lesser-included offense of theft.  In fact, the offense that had typically been considered the lesser-included offense–possession of a stolen motor vehicle–can carry a higher penalty than the greater offense of theft.  This does not offend the constitution.  Hence, the Illinois Supreme Court has implicitly held that two very similar offenses can be mutually exclusive.  
Bryant
, 128 Ill. 2d at 448, 539 N.E.2d at 1221.

For the foregoing reasons, we find that the residential burglary and burglary statutes are constitutional.

Finally, defendant claims that the circuit court lacked the authority to order 50% of defendant's wages to be withheld by the Department to pay court costs.

In 
People v. Watson
, 318 Ill. App. 3d 140, 142-43, 743 N.E.2d 147, 149 (2000), the court held that no authority exists for the circuit court to direct that the Department withhold wages earned while a defendant is imprisoned.  In fact, the 
Watson
 decision states that when a court enters an order that it lacks the inherent power to enter, the order is void.  The 
Watson
 court then proceeded to vacate the circuit court's order.  The court followed 
Watson
 in 
People v. Williamson
, 319 Ill. App. 3d 891, 900, 747 N.E.2d 26, 34 (2001), and 
People v. Calvert
, No. 4-00-0443, slip op. at 35 (4th Dist. December 11, 2001).  However, in 
Calvert
 and 
Williamson
, the courts determined that it is proper for a court to vacate only that portion of the circuit court's sentencing order directing the Department to withhold 50% of a defendant's wages.  We agree.

Since no authority exists for the circuit court to withhold 50% of defendant's monthly corrections income, that portion of the circuit court's order directing the Department to do so is void, and we vacate it.  We note, however, that defendant was not fined or required to pay any restitution but was ordered to pay $123 in court costs.  The judgment also ordered defendant to pay the court costs within six months of his release from prison.  This portion of the order stands.  See 
Williamson
, 319 Ill. App. 3d at 900, 747 N.E.2d at 34; 
Calvert
, slip op. at 35.

In light of the foregoing considerations, we find that the evidence was sufficient to permit a rational jury to find that defendant broke into a "dwelling place" with the intent to commit a theft.  Additionally, the Illinois legislature is not prohibited constitutionally from declaring residential burglary and burglary mutually exclusive offenses.  Finally, we vacate that portion of the circuit court's order requiring 50% of defendant's wages to be withheld by the Department to pay court costs, and we remand this cause with directions to modify the written judgment of sentence as stated.

Affirmed in part and vacated in part; cause remanded with directions.

GOLDENHERSH and HOPKINS, JJ., concur.

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 02/15/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.