SIXTH DIVISION
March 5, 2010

No. 1-07-1309

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 11448 |
| | ) | |
| MARCUS McGEE, | ) | Honorable |
| | ) | Lawrence Terrell, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

Defendant Marcus McGee was found guilty of residential burglary after a bench trial and sentenced to 15 years' imprisonment. He contends on appeal that the State failed to prove beyond a reasonable doubt that the uninhabited building he entered was a dwelling place within the meaning of the statute, or that he was aware of that fact. He also contends that his sentence was excessive and that the trial court erred by deferring a ruling on his motion *in limine* to bar the use of evidence of earlier convictions to impeach his credibility until after he testified, and also by ruling in favor of the State on that motion.

Before trial, defense counsel made an oral motion *in limine* to bar the State from using as impeachment defendant's earlier convictions for burglary and residential burglary or convictions more than 10 years old, under People v. Montgomery, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).

The State responded that it would not introduce earlier convictions in its case-in-chief but reserved the right to introduce such evidence as impeachment if defendant testified. The court asked defense counsel if he had case law supporting his position, and counsel stated he would provide such to the court before defendant testified. The court reserved ruling on the motion.

At trial, Monique Henderson testified that her parents' house in Maywood, Illinois, was damaged in a fire on November 18, 2004. Personal belongings remained in the house after the fire, including clothes, a book bag and furniture. She visited the area daily to check on the condition of the house and its contents and to spend time there.

About 6 p.m. on April 10, 2005, Henderson went to the house with her mother, Nancy Hugo. Henderson went to the back of the house, and Hugo went to the front. When Henderson walked onto the porch and opened the back door, she noticed it was unlocked and one of the windows was broken. She saw defendant standing inside, about five feet away, carrying a kitchen knife and a CD case. Henderson then heard Hugo say, "what are you doing in my house?" Defendant looked up, and Henderson closed the door and ran to the fence at the end of the backyard. Henderson then spoke to Hugo on her cell phone, verified that someone was inside the house and called the police.

While Henderson was on the phone, she saw defendant and another person run out of the house through the back door. Defendant dropped Henderson's book bag on the porch stairs and said "I don't want any trouble," as he exited the backyard. About five minutes later, police arrived with defendant. Henderson identified defendant as the person she had seen inside the building.

On cross-examination, Henderson said nobody had lived in the building since the fire. She

2

said the top floor of the house was ruined by the fire and there was a blue tarp covering a window on that floor. She explained that at the time of the burglary, she was planning to move back into the house.

Nancy Hugo testified that she owned the building at 1216 South 3rd Avenue in Maywood and had lived there with her family since 1982. She also testified that she checked on the condition of the house daily following the fire. On April 10, 2005, the building contained furniture, appliances and other personal belongings.

About 6 p.m. that evening, Hugo went to the house with Henderson and noticed a hole in a board that had been covering a front window. Hugo then walked to the front door while Henderson went around to the back. Hugo saw a man coming out of the house through the hole in the board, holding a violin case. He looked at her, said "I'm sorry," and went back into the house. Hugo then said, "what are you doing in my house?" and called Henderson on her cell phone. Hugo told Henderson that there was a man in the house, and Henderson replied that there was another man in the back. Henderson called police, who later arrived with defendant.

On cross-examination, Hugo said that the house had gone into foreclosure after the burglary, and she sold it at a sheriff's auction in December 2006. She said nobody lived in the building between the burglary and the sale.

Maywood police detective Joseph Peck testified that about 6 p.m. on April 10, 2005, he received a dispatch of a possible burglary at 1216 South 3rd Avenue and drove to that location. On arrival, Peck spoke with Henderson, who described one of the offenders as a black male with a bald head, about 6 feet tall and weighing 200 pounds. Peck broadcast that description over the

3

radio and inspected the house. He recovered a blue book bag from the rear porch, which Henderson identified as hers, and a violin case. Defendant was later brought to the building by Maywood police officer Escamilla and identified there by Henderson as the person she saw drop a book bag and exit the rear of the house.

Officer Escamilla testified that shortly after 6 p.m. on April 10, 2005, he received a radio dispatch of a burglary at 1216 South 3rd Avenue and a description of one of the offenders. While driving in the area, he saw defendant running away from the location of the burglary. Escamilla approached defendant and saw that he was sweating heavily. He told defendant there was a burglary in progress and asked him to accompany him to the scene of the crime because he resembled the description of the offender. Escamilla drove defendant to the house, where he was identified by Henderson.

Maywood police officer Patrick Grandberry testified that on April 10, 2005, he was assigned as an evidence technician to process evidence in connection with a burglary. At the police station, he inventoried a cell phone, pagers, toothpaste boxes, a CD case, a photo album and other items found inside a blue book bag he was given by Detective Peck. Grandberry showed these items to Henderson and Hugo, who identified them as theirs. He also took latent fingerprints from one of the toothpaste boxes and sent the prints along with a copy of defendant's fingerprints to the Illinois State Police crime lab for further analysis.

The parties stipulated that, if called, Mary Beth Thomas would testify that she was a forensic scientist and expert on fingerprint identification. Her examination of the fingerprints on the toothpaste box taken by Officer Grandberry revealed they were made by defendant.

Defendant testified. He said that on April 10, 2005, he was 49 years old, had recently been released from prison and was living on the streets when he saw a "burnt-up" building at 1216 South 3rd Avenue with garbage in the yard. He went through the garbage and was picking up some of it when a woman asked him what he was doing there. He raised his hands, said he was not doing anything and left. Defendant further testified that he did not think anyone lived in the building and that the objects in the yard were garbage because there was fire damage.

In rebuttal, the State introduced certified copies of defendant's July 9, 2002, felony conviction for aggravated unlawful use of a weapon and his July 23, 1997, felony conviction for aggravated robbery. Defense counsel objected, claiming the probative value of the convictions was outweighed by their prejudicial effect. After considering arguments from both parties on the probative and prejudicial nature of the convictions, the court admitted them.

The court then found defendant guilty of residential burglary, stating that the crucial issue was whether the State proved beyond a reasonable doubt that the building was a dwelling place. The court found that the home was not abandoned because the family intended to return to it, noting that the first floor contained personal property which was boxed and bagged and was secured by locked doors.

On appeal, defendant first contends the State failed to prove him guilty of residential burglary beyond a reasonable doubt. He claims that the State failed to establish that, under the statute, the building he entered was a dwelling and so his conviction should be reduced to the lesser included offense of burglary.

Where a defendant challenges the sufficiency of the evidence, the standard of review is

whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Hall, 194 Ill. 2d 305, 330, 743 N.E.2d 521 (2000). This standard recognizes the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the evidence. People v. Campbell, 146 Ill. 2d 363, 375, 586 N.E.2d 1261 (1992). A reviewing court will not set aside a criminal conviction unless the evidence is so unreasonable or improbable as to raise a reasonable doubt of the defendant's guilt. Hall, 194 Ill. 2d at 330.

Here, defendant was found guilty of residential burglary. To sustain this conviction, the evidence must show that defendant, knowingly and without authority, entered or remained within a dwelling place, or any part of it, with the intent to commit a felony or theft in it. 720 ILCS 5/19-3(a) (West 2004).

Defendant claims the State failed to prove Hugo's house was a dwelling place. He asserts that nobody was living in the house at the time of the burglary and that, based on its fire-damaged and boarded-up condition, the building was not a dwelling place within the ambit of the statute.

A dwelling place is statutorily defined as "a house, apartment, mobile home, trailer, or other living quarters in which at the time of the alleged offense the owners or occupants actually reside in or in their absence intend within a reasonable period of time to reside." 720 ILCS 5/2-6(b) (West 2004).

The record shows the house had been the dwelling place of Hugo since 1982, and although it sustained considerable damage in the fire, the first floor of the building was still in use to store clothes, furniture, appliances and other personal belongings. Hugo and Henderson

6

testified that they checked on the premises and their belongings daily, and Henderson testified that at the time of the burglary, she was planning to move back into the house.

By locking and boarding up the first floor and checking on its condition daily, Henderson and Hugo showed concern for privacy, sanctity of the home and the potential for serious harm as addressed by the residential burglary statute. People v. Silva, 256 Ill. App. 3d 414, 420-21, 628 N.E.2d 948 (1993). That Hugo and Henderson resided in the building before the fire and continued to have contact with it support the reasonable inference that they left their belongings in the building with the intent of returning to reside there. People v. Torres, 327 Ill. App. 3d 1106, 1112-13, 764 N.E.2d 1206 (2002). We believe the State presented sufficient evidence to support the trial court's determination that, at the time of the burglary, the home was not abandoned and that Hugo and Henderson intended to use it as a residence in the near future. This satisfies the definition of a dwelling place under the statute. Silva, 256 Ill. App. 3d at 420. That the property was later lost to foreclosure does not negate the intent of Hugo and Henderson to use the building as a residence when defendant entered.

Defendant further asserts that he believed the building to be abandoned and that the State failed to prove beyond a reasonable doubt that he knew the building was a dwelling place when he entered it. But the evidence shows that the building was a residence and despite being damaged from a fire, the family continued to store personal belongings in it and secured it by locking the doors and boarding it up. This was sufficient to support the inference that defendant knew or had reason to know that the building was a dwelling place (People v. Quiver, 205 Ill. App. 3d 1067, 1071-72, 563 N.E.2d 991 (1990)), and that he entered it with the intent to commit a theft. This

7

was sufficient to prove defendant guilty of residential burglary beyond a reasonable doubt (720 ILCS 5/19-3(a) (West 2004)).

Defendant next contends his 15-year sentence for residential burglary is excessive. He concedes that he failed to raise this issue in a motion to reconsider sentence but asks that we review the matter as plain error. 134 Ill. 2d R. 615(a). Although the plain error rule allows a defendant to circumvent the waiver doctrine if he can demonstrate that his excessive sentence amounted to plain error (People v. Smith, 321 Ill. App. 3d 523, 534, 747 N.E.2d 1081 (2001)), we must first determine whether error occurred. Without reversible error, there can be no plain error. People v. Herron, 215 Ill. 2d 167, 187, 830 N.E.2d 467 (2005).

Here, defendant does not dispute that the 15-year term falls within the permissible statutory range. Defendant argues that in light of the nature of the offense and his rehabilitative potential, the sentence was excessive. He asserts that nobody was injured during the offense, that his criminal background is not violent, and that the court ignored his rehabilitative potential which was apparent from his age, education and work history. He also claims the court failed to consider his battle with drug addiction and the financial costs of incarceration.

Where the sentence imposed by the trial court falls within the statutory range for the offense of which the defendant is convicted, a reviewing court may disturb that sentence only if the trial court has abused its discretion. People v. Jones, 168 Ill. 2d 367, 373-74, 659 N.E.2d 1306 (1995). Such a sentence is excessive where it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. People v. Stacey, 193 Ill. 2d 203, 210, 737 N.E.2d 626 (2000).

Here, the record shows the trial court made its sentencing decision after considering the appropriate sentencing factors. The court noted defendant's extensive criminal history, including seven felony convictions, five of which were violent offenses. The court also noted defendant's age, the nature of the crime, his physical problems and drug addiction, as well as his education and family background.

It is not our prerogative to reweigh those factors and independently decide that the sentence is excessive. People v. Coleman, 166 Ill. 2d 247, 261-62, 652 N.E.2d 322 (1995). The record establishes that the trial court considered proper aggravating and mitigating factors and imposed a term within the statutory range. Under these circumstances, we find no abuse of discretion. People v. Almo, 108 Ill. 2d 54, 70, 483 N.E.2d 203 (1985). There was no error.

Defendant next contends he is entitled to a new trial because the delayed ruling on his motion *in limine* prevented him from making an informed and intelligent decision on whether to testify. The State argues defendant has waived this issue under People v. Enoch, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988). But a court may review issues despite waiver under the plain error rule. Herron, 215 Ill. 2d at 186-87. We first consider whether an error occurred. Herron, 215 Ill. 2d at 187.

We decide whether the admission of a defendant's earlier convictions would be more prejudicial than probative by using the balancing test in Montgomery, 47 Ill. 2d at 517-18. An earlier conviction of the defendant or another witness is admissible as impeachment if less than 10 years have elapsed since the date of the conviction of the prior crime or release of the witness from confinement " 'only if the crime, (1) was punishable by death or imprisonment in excess of

9

one year ***, or (2) involved dishonesty or false statement regardless of the punishment unless (3), in either case, the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice.' " Montgomery, 47 Ill. 2d at 516, quoting Rule 609 of the Federal Rules of Evidence, 51 F.R.D. 391. This appeal asks whether a trial court errs in deferring the Montgomery test until after a defendant has testified.

During the pendency of this trial and appeal, our supreme court addressed the proper timing for a Montgomery analysis in People v. Patrick, 233 Ill. 2d 62, 69, 908 N.E.2d 1 (2009). The result was a determination that "in most cases, the trial judge will possess the information necessary to conduct a Montgomery hearing before trial." Patrick, 233 Ill. 2d at 73. "[A] trial court's failure to rule on a motion *in limine* on the admissibility of prior convictions when it has sufficient information to make a ruling constitutes an abuse of discretion." Patrick, 233 Ill. 2d at 73. "[I]n all but the most complicated cases, a judge will have enough information before trial to weigh the probative value of admitting the [defendant's] prior conviction against the danger of unfair prejudice to the defendant." Patrick, 233 Ill. 2d at 73. The supreme court in Patrick relied on People v. Averett, 381 Ill. App. 3d 1001, 886 N.E.2d 1123 (2008), an appellate court decision also issued during the pendency of this case. "It is a matter of simple fairness that courts should rule on [motions *in limine* to bar earlier convictions] as soon as is practicable." Averett, 381 Ill. App. 3d at 1019. "[T]he refusal by a circuit court to rule deprives a defendant of information needed to make an informed and intelligent decision about whether to testify." Averett, 381 Ill. App. 3d at 1020. A criminal defendant's right to testify implicates a constitutional right. Patrick, 233 Ill. 2d at 69.

Here, neither the defendant, the prosecution nor the trial court had the benefit of Patrick at trial. Still, Patrick is applicable because our supreme court's decisions generally apply retroactively to causes pending at the time they are announced, including cases pending on direct review. People v. Cortes, 181 Ill. 2d 249, 276, 692 N.E.2d 1129 (1998). There is no showing in the record that the trial court could not have conducted an effective Montgomery balancing test before defendant testified. Under these circumstances, the trial court's failure to rule was an abuse of discretion. Patrick, 233 Ill. 2d at 73. See also People v. Hernandez, 394 Ill. App. 3d 527, 531-32, 915 N.E.2d 856 (2009) (applying Patrick).

But, even where an error is of a constitutional magnitude, a defendant is not entitled to a new trial if the error was harmless beyond a reasonable doubt. Patrick, 233 Ill. 2d at 75, citing Chapman v. California, 386 U.S. 18, 24, 17 L. Ed. 2d 705, 710-11, 87 S. Ct. 824, 828 (1967). The test is whether it appears that the error contributed to the outcome. People v. Patterson, 217 Ill. 2d 407, 428, 841 N.E.2d 889 (2005).

The facts here show the trial court's error in deferring its ruling on defendant's motion *in limine* did not contribute to the outcome. Defendant was tried before the bench, not a jury. The prejudicial effect of the error is of less concern when the evidence of earlier convictions is presented in a bench trial because it is presumed the trial court will consider only properly admitted evidence. People v. Eubanks, 279 Ill. App. 3d 949, 958, 665 N.E.2d 464 (1996). Patrick was a jury trial where the trial court's deferred decision prevented defense counsel from either telling the jury that defendant would testify or anticipatorily disclosing the earlier convictions to lessen the prejudicial effect. Patrick, 233 Ill. 2d at 75. The error in Patrick was

11

not harmless because the defendant was substantially prejudiced. Patrick, 233 Ill. 2d at 75.

This case is distinguishable from Patrick because of differing theories of defense. The defendant in Patrick relied on a theory of self-defense. Patrick, 233 Ill. 2d at 75. "The impact of the convictions on Patrick's credibility is clear from the State's focused and repeated argument urging the jury not to believe a three-time convicted felon." Patrick, 233 Ill. 2d at 75-76. Here, defendant's decision to testify and his credibility as a witness were not critical to his primary defense: that the State failed to prove the building was a dwelling place. Defense counsel extensively cross-examined Henderson and Hugo on the abandoned and burned-out condition of the building and spent the entire closing argument reiterating the assertion that the building was not a dwelling place under the statute. Defendant claimed that he entered only the yard and not the building, but this testimony was refuted by Henderson and Hugo, who placed defendant inside the house, and by the fingerprint evidence on items taken from the house.

In light of the above, we conclude the court's error in deferring its ruling on defendant's motion *in limine* until after he testified was harmless beyond a reasonable doubt. Accord People v. Weatherspoon, 394 Ill. App. 3d 839, 857-58, 915 N.E.2d 761 (2009) (distinguishing Patrick and People v. Hogan, 388 Ill. App. 3d 885, 904 N.E.2d 1036 (2009) (reversing on Patrick grounds the defendant's convictions after trial court deferred its ruling on motion *in limine*)).

Defendant next argues that regardless of our conclusion on the timing of the trial court's ruling on the motion *in limine*, we must find the trial court erred in finding the convictions more probative than prejudicial. He claims the trial court erred in conducting the Montgomery balancing test and allowing the introduction of his 2002 conviction for aggravated unlawful use of

12

a weapon and his 1997 conviction for aggravated robbery. The State replies that defendant waived this issue by failing to raise it in a motion for new trial. We review the issue for plain error. People v. Milligan, 327 Ill. App. 3d 264, 267, 764 N.E.2d 555 (2002).

A witness's credibility may be impeached by an earlier conviction if: the crime was punishable by death or imprisonment in excess of one year or involved dishonesty or false statement regardless of the punishment; less than 10 years have elapsed since the date of conviction or the release of the witness from confinement, whichever is later; and the probative value of admitting the earlier convictions outweighs the danger of unfair prejudice. People v. Atkinson, 186 Ill. 2d 450, 456, 713 N.E.2d 532 (1999). This last factor directs the trial court to weigh the probative value of the convictions against the danger of unfair prejudice. Atkinson, 186 Ill. 2d at 456. The trial court's decision is reviewed for an abuse of discretion. Montgomery, 47 Ill. 2d at 518.

The record shows the court conducted a proper balancing test and adhered to the Montgomery rule in finding the convictions admissible for impeachment purposes. Atkinson, 186 Ill. 2d at 463. This was a bench trial, where there is a presumption that the court considered only competent evidence (Eubanks, 279 Ill. App. 3d at 959). We find no plain error to excuse defendant's forfeiture of this issue.

We affirm the judgment of the circuit court of Cook County.

Affirmed.

J. GORDON and McBRIDE, JJ., concur.

13