2019 IL App (1st) 170222-U

No. 1-17-0222

Order filed October 24, 2019

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 18694 |
| | ) | |
| JOSE FLORES, | ) | Honorable |
| | ) | Erica L. Reddick, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1　*Held*: Defendant's conviction for residential burglary is affirmed over his contentions that the State committed error in closing arguments, that the trial court's findings were not based upon the evidence, and that the trial court did not exercise proper discretion in not appointing an interpreter for defendant.

¶ 2　Following a bench trial, defendant Jose Flores was convicted of residential burglary (720 ILCS 5/19-3(a) (West 2016)) and sentenced to six years' imprisonment. On appeal, defendant contends that he was denied his right to: (1) a fair trial based on prosecutorial misconduct during

closing arguments; (2) due process because, in finding him guilty, the trial court misstated the evidence presented; and (3) be present at trial because the court erred in accepting his waiver of a Spanish interpreter. We affirm.

¶ 3 Defendant was charged by information with residential burglary (720 ILCS 5/19-3(a) (West 2016)). Defendant waived his right to a jury trial and the case proceeded to a bench trial.

¶ 4 The record shows that prior to trial, there were several continuances where defendant was present without the assistance of a Spanish interpreter. On May 11, 2016 and June 7, 2016, a Spanish interpreter was present in court and assisted defendant in the proceedings. On August 4, 2016, prior to starting the bench trial, the court inquired whether defendant required the services of the interpreter during trial. The following colloquy occurred:

"THE COURT: All right. Now [defendant], I do want to resolve one other issue. On a previous court date, it looks like back on May the 11th, I entered the finding that the Spanish interpreter was necessary and that the Spanish interpreter was in court. And again—let me just look—just on that date. It looks like no other date. Do you require the Spanish interpreter?

DEFENDANT: Not right now.

THE COURT: Okay. What do you mean by not right now?

DEFENDANT: I mean I never asked for the interpreter.

THE COURT: All right.

DEFENDANT: I understand well the English.

THE COURT: Where did you go to school, sir?

DEFENDANT: Here.

THE COURT: All right. How long have you been in the United States?

DEFENDANT: 40 years ma'am.

THE COURT: Okay. So you do not need the Spanish interpreter today?

DEFENDANT: No. But I really do need to anyways if I'm going to trial to face the plaintiff, you know.

THE COURT: Okay. All right. So I will enter the finding that the Spanish interpreter is not necessary based on my questions of [defendant] today."

¶ 5    Antonio Campuzano testified, through an interpreter, that on September 3, 2012, he was living in an apartment on the first floor of a building located on the 4000 block of West Melrose Street. Campuzano was lying in his bed resting and saw some items that were on a piece of furniture next to his bedroom window fall to the floor. He saw the air conditioning unit that was in the window move and pieces of cardboard that he had placed next to it fall to the floor of the bedroom and create an opening. Campuzano's apartment window was about six or seven feet from the ground outside. He saw defendant pushing his body through the opening in the bedroom window. Campuzano explained that defendant was coming "head first" through the window and he saw "half of (defendant's) body, from the waist up" coming through his window. Campuzano had known defendant for about "two or three years" because defendant lived in the same building and their children attended the same school. Campuzano asked defendant what he wanted. Defendant then backed out of the window and walked towards the alley. Campuzano looked through the window and told defendant that he was going to call the police. Defendant asked Campuzano to forgive him and said he just wanted Campuzano to "lend him $20" because his wife was sick. Campuzano asked defendant "why [defendant] had not rung the front door."

Defendant apologized and continued walking through the alley. Campuzano testified it was daylight and he was able to see defendant's face as he was walking in the alley.

¶ 6    Campuzano called the police, who arrived at his home. He told the officers what happened and the officers looked at the fallen objects in his bedroom. On September 10, 2012, officers came to Campuzano's home and showed him a photo array. He identified defendant's photo from the array as the person that entered his bedroom on September 3, 2012. On cross-examination, Campuzano testified that the incident occurred about 4 p.m.

¶ 7    Chicago police officer Sean Markham testified that in September 2012, he was assigned to the robbery/burglary mission team of the 17th police district. On September 3, 2012, Markham was assigned to investigate a residential burglary that occurred on the 4000 block of West Melrose. There, Campuzano told Markham defendant's name and that he knew defendant because they lived in the same building. Markham ran defendant's information "in the land based or computer station" and gave the information to a detective, who compiled a photo array. On September 10, Markham went to Campuzano's home and showed him the photo array. Campuzano identified defendant's photo from the array. After Campuzano identified defendant, Markham went to defendant's residence and placed him under arrest. As Markham transported him to the 17th District, defendant admitted to pushing out the cardboard "from the side window or back window into—or pulled it out of the window to try to get into the house."

¶ 8    Chicago police detective John McInerney testified that he was assigned to a residential burglary that occurred on September 3, 2012, in an apartment located on the 4000 block of West Melrose. McInerney spoke to Markham and then compiled a photo array. On September 10, 2012, McInerney spoke with defendant in the 17th District. After reading defendant his *Miranda*

warnings, defendant agreed to speak with McInerney. Defendant told McInerney that he went to the apartment because he needed money. Defendant had lived in the building previously and knew Campuzano. He said he rang the doorbell but no one responded. He went to the alley and found a chair. He placed the chair against the building and stood on it. He removed some cardboard that was next to an air conditioner in the window. Defendant said he was going to enter the apartment to take money because he needed to buy Tylenol for his wife, who was sick. McInerney told defendant that Campuzano saw him pushing in the dresser and crawling through the window. Defendant stated he did not enter the apartment but was going to enter the apartment. He acknowledged that he knew it was wrong and, when Campuzano caught him, he apologized.

¶ 9    In closing, the State argued that the evidence presented was sufficient to establish defendant's guilt beyond a reasonable doubt. In doing so, the State noted that Campuzano saw defendant's upper torso coming through his window and called the police. The State argued defendant was arrested and admitted to McInerney that he "pushed the cardboard through the—it was next to the air conditioning unit and it went through the window." The State further argued that "defendant admitted to the detective that he entered the apartment to take money because he needed money for his wife which is the same testimony that you heard from the victim as to what the defendant said as he was shouting to the victim in that alley as to why it was he was coming through the victim's window to take items from [Campuzano]."

¶ 10    After hearing closing arguments, the court found defendant guilty of residential burglary. In announcing its ruling, the court stated:

"[t]he complaining witness in sum did testify credibly, clearly, and was ultimately not impeached as to the actual elements necessary to establish the charge of residential burglary. Specifically, it was clear, it was credible, and corroborated that the testimony that the defendant did actually enter the home and the additional evidence came from the statements that the defendant gave to police personnel that he entered the home with the specific intention of gaining some money or some item and it was because of a concern for his wife at the time.

Further, that the defendant apologized, that the defendant also said he understood or knew that what he did was wrong. Again, it is unrebutted that the defendant made these statements, although clearly, based on the defendant's statement to Detective McInerney, the defendant denied actually entering, like placing his body in the residence, but the sum of the evidence in this court's opinion is that the State has proven with proof beyond a reasonable doubt the elements of the offense of residential burglary, and as such there's a finding of guilty."

¶ 11    Defendant filed an amended motion for the court to reconsider its ruling and a motion for new trial, which the court denied. After a hearing, the court sentenced defendant, based on his background, as a Class X offender to six years' imprisonment.

¶ 12    On appeal, we first address defendant's argument that he was denied a fair trial based on prosecutorial misconduct during closing argument. Specifically, defendant contends that the prosecutor misstated the evidence by arguing that defendant told McInerney that he had pushed the cardboard through the window, when he had only described "removing" the cardboard to the detective. He also argues that the State's comments that his statement to the detective and

Campuzano's testimony were "almost exactly the same" was improper, false and prejudicial. Defendant requests that we reverse and remand the matter for a new trial based on the prosecutor's statements.

¶ 13     In setting forth this argument, defendant concedes that he failed to preserve this issue for review because he did not object to the State's closing argument at trial, nor did he include the issue in his posttrial motion. See *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("To preserve a claim for review, a defendant must both object at trial and include the alleged error in a written posttrial motion"). However, he argues that we may review his claim under either prong of the plain error doctrine.

¶ 14     Illinois Supreme Court Rule 615 provides an exception to forfeiture when there are "plain errors or defects affecting substantial rights." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). A plain error may occur when a clear or obvious error occurred and (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Under either prong of the plain error doctrine, the burden of persuasion remains on the defendant. *People v. Nowells*, 2013 IL App (1st) 113209, ¶ 19. A reviewing court conducting plain error analysis must first determine whether an error occurred, as "[w]ithout reversible error, there can be no plain error." *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010). Here, we find no error.

¶ 15     It is well-settled that the State has "wide latitude" in closing argument. *People v. Runge*, 234 Ill. 2d 68, 142 (2009). A prosecutor may comment on the evidence presented at trial and the

reasonable inferences therefrom. *People v. Nicholas*, 218 Ill. 2d 104, 121-22 (2005). A prosecutor's closing argument must be viewed in its entirety and the challenged remarks must be viewed in context. *People v. Thompson*, 2016 IL App (1st) 133648, ¶ 47. Even where there are improper comments, reversal is warranted only where the "remarks caused substantial prejudice to the defendant, taking into account the content and context of the comment, its relationship to the evidence, and its effect on the defendant's right to a fair and impartial trial." *People v. Johnson*, 208 Ill. 2d 53, 115 (2003); accord *People v. Love*, 377 Ill. App. 3d 306, 313 (1st Dist. 2007). Substantial prejudice is caused when "it is impossible to say whether or not a verdict of guilt resulted from" the comments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007). We review *de novo* the legal issue of whether a prosecutor's misconduct, such as improper statements during closing argument, was so egregious that it warrants a new trial. *People v. Cook*, 2018 IL App (1st) 142134, ¶¶ 61-62 (citing *Wheeler*, 226 Ill. 2d at 121).

¶ 16    The record shows that during the State's closing argument, the prosecutor stated that:

> "defendant admitted that he put a chair outside of the building and that he found that chair in the alley and then he stood on that chair, he pushed the cardboard, and it through the—it was next to the air conditioning unit and it went through the window. So the defendant's testimony and the victim's testimony is almost exactly the same as to what happened as it relates to defendant entering the victim's residence."

The State also argued that defendant told detective McInerney that:

> "he walked around to the alley. He said he found a chair lying in the alley and he placed the chair up against the building. [Defendant] said that he stood up on top of the chair and he removed some cardboard that was next to an air conditioner that was in the

window. *** [Defendant] said he was going to enter the apartment to take some money because he needed to buy his wife who was sick some Tylenol."

Defendant maintains that these comments were prejudicial because they portray him as essentially admitting to an illegal entry.

¶ 17     After viewing the State's remarks in context, we find that they were not improper because they were based on the evidence presented and the reasonable inferences therefrom. Campuzano testified he was lying in bed when objects on a piece of furniture began moving and the cardboard surrounding his window air conditioner unit was pushed in. Campuzano saw defendant's upper torso attempting to gain entry into his apartment through the pushed in cardboard. Defendant told Campuzano that he needed $20 because his wife was sick. Campuzano called the police and defendant was arrested a few days later. Defendant told the arresting officer that he pushed out the cardboard next to the air conditioner "to try to get into the house." Later, defendant told Detective McInerney that he removed the cardboard from the window because "he was going to enter the apartment to take money." Defendant also told McInerney that he needed money to buy medicine for his wife who was sick. Given this record, the State properly argued that defendant's statements and Campuzano's testimony were "almost exactly the same."

¶ 18     That said, even where there are improper comments, reversal is warranted only where the remarks caused substantial prejudice to the defendant such that it is impossible to say whether or not a verdict of guilt resulted from the comments. Here, in finding defendant guilty, the trial court expressly noted that Campuzano testified credibly as to the actual elements necessary to establish the offense of residential burglary. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 91 (in

a bench trial the judge is presumed to know the law and apply it correctly). As such, there is no indication that the State's allegedly improper remarks contributed to the verdict. Since we have found that no error occurred, there can be no plain error. See *People v. McGee,* 398 Ill. App. 3d 789, 794 (2010) ("[w]ithout reversible error, there can be no plain error").

¶ 19 Defendant next contends he was denied his right to due process because the trial court, in finding him guilty, relied on the State's erroneous remarks during closing argument. Specifically, he argues that the court inaccurately recalled his statement and mistakenly found that it was both sufficient proof of burglary and that it verified Campuzano's account of the offense.

¶ 20 In setting forth this argument, defendant acknowledges that he did not preserve this issue for review because he did not object at trial or raise this issue in his motion for new trial. Nevertheless, he requests that we review the issue under the plain error doctrine. As mentioned, a reviewing court conducting plain error analysis must first determine whether an error occurred, as "[w]ithout reversible error, there can be no plain error." *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010). Here, we find no error.

¶ 21 During a bench trial, a trial court's misapprehension of evidence crucial to the defense violates the defendant's right to due process. *People v. Mitchell*, 152 Ill. 2d 274, 321 (1992). However, if a circuit court properly recalls the crux of the defense, then an "incorrect reference" or mere "misstatement" by the court, when considered in the context, does not amount to a denial of the defendant's due process rights or plain error. *People v. Roman*, 2013 IL App (1st) 102853, ¶¶ 21-24. In a bench trial, the court is responsible for determining "the credibility and weight of witness testimony" and resolving "conflicts and inconsistencies present therein" and making reasonable inferences from it. *People v. Simon*, 2011 IL App (1st) 091197, ¶ 52. The trial court is

presumed to have considered only competent evidence in reaching its verdict, unless that presumption is rebutted by affirmative evidence in the record. *Id.* at ¶ 91. A court does not improperly recall a witness' testimony where it summarizes the testimony and draws a reasonable inference therefrom. *Id.* at ¶¶ 95-96. Whether a defendant's due process rights have been denied is an issue of law that we review *de novo*. *People v. Williams*, 2013 IL App (1st) 111116, ¶ 79. We, however, defer to the findings of the trial court on issues of the credibility of the witnesses. *People v. Kite*, 153 Ill. 2d 40, 46 (1992).

¶ 22    In order to prove defendant guilty of residential burglary, the State was required to show that he knowingly and without authority entered the dwelling of another with the intent to commit a felony or theft. 720 ILCS 5/19-3(a) (West 2012); *People v. Natal*, 368 Ill. App. 3d 262, 268 (2006). Intent may be proven by circumstantial evidence such as time, place, and manner of entry into the dwelling as well as alternative explanations for the defendant's entry. *People v. Maggette*, 195 Ill. 2d 336, 354 (2001).

¶ 23    Here, defendant argues that the court, in finding him guilty, mistakenly believed that he confessed to pushing the cardboard through the window while his statement to detective McInerney was that he removed the cardboard from the window. He argues that "pushing the cardboard through the window would likely create an entry because, in pushing cardboard, one's hand would likely follow. Yet according to the testifying detective, [defendant] only acknowledged 'removing' window cardboard; further [Markham], after clarifying his testimony, testified that [defendant] had described 'pulling' cardboard." Defendant claims that the court's finding that he "pushed" the cardboard misstated the facts which created false inculpatory evidence. He maintains the court's finding that his statement to the detective corroborated

Campuzano's testimony undermined the crux of his defense, which was to challenge Campuzano's credibility.

¶ 24 The record does not affirmatively indicate that the court violated defendant's due process rights by failing to recall and consider testimony crucial to his defense. In issuing its ruling, the court expressly noted that Campuzano testified credibly to the "actual elements necessary to establish the charge of residential burglary." The court addressed Campuzano's testimony, noting that defendant entered his home with the specific intention of gaining money to purchase medicine for his wife who was sick. Importantly, the court expressly noted that, in his statement to McInerney, defendant "denied actually entering, like placing his body in the residence." As such, notwithstanding whether defendant pushed in the cardboard or pulled the cardboard, the court ultimately drew reasonable inferences from the testimony presented. *Simon*, 2011 IL App (1st) 091197, ¶¶ 95-96 (A court does not improperly recall a witness' testimony where it summarizes the testimony and draws a reasonable inference therefrom). Accordingly, the court did not deny defendant's due process rights. Since we have found that no error occurred, there can be no plain error. See *McGee,* 398 Ill. App. 3d 789, 794 (2010) ("[w]ithout reversible error, there can be no plain error").

¶ 25 Lastly, defendant argues that the trial court denied his constitutional right to be present by accepting his waiver of the Spanish interpreter because it was neither knowingly nor intelligently made. Defendant again acknowledges that he did not preserve the issue for review but nevertheless argues that we review his claim under the plain error doctrine.

¶ 26 As stated above, the plain error doctrine allows errors not previously challenged to be considered on appeal if either: (1) the evidence is so closely balanced that the error alone

threatened to tip the scales of justice against defendant, or (2) that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Nowells*, 2013 IL App (1st) 113209, ¶ 18. Under either prong of the plain error doctrine, the burden of persuasion remains on the defendant. *Id*. at ¶ 19. A reviewing court conducting plain error analysis must first determine whether an error occurred, as "[w]ithout reversible error, there can be no plain error." *People v. McGee*, 398 Ill. App. 3d 789, 794 (2010). Here, we find no error has occurred.

¶ 27    In cases involving the need for an interpreter we have held, "[W]ithout the aid of an interpreter, a defendant who speaks only a foreign language or with limited English proficiency, while having a physical presence in the courtroom, lacks a mental presence by his or her inability to understand or participate meaningfully in the proceedings." *People v. Argueta*, 2015 IL App (1st) 123393, ¶ 32; *People v. Raczkowski*, 359 Ill. App. 3d 494, 496 (2005). "The availability of the language assistance of an interpreter lies within the discretion of the trial court." *Argueta*, 2015 IL App (1st) at ¶ 33. The trial court must consider "'the factual question of whether an interpreter is needed; a trial court does not have the discretion to deny an interpreter to a defendant who needs one.'" *Argueta*, 2015 IL App (1st) at ¶ 34; quoting *People v. Raczkowski*, 359 Ill. App. 3d 494, 498 (2005). "Where an abuse of that discretion deprives defendant of a basic right, a conviction will be reversed." *Argueta*, 2015 IL App (1st) at ¶ 34; quoting *People v. Rivera*, 72 Ill. App.3d 1027, 1039 (1979).

¶ 28    The Criminal Proceeding Interpreter Act states:

"Whenever any person accused of committing a felony or misdemeanor is to be tried in any court of this State, the court shall upon its own motion or that of defense or

prosecution determine whether the accused is capable of understanding the English language and is capable of expressing himself in the English language so as to be understood directly by counsel, court or jury" 725 ILCS 140/1 (West 2016).

¶ 29    Here, we find the trial court did not abuse its discretion in accepting defendant's waiver of the interpreter. The record shows that the trial court conducted a lengthy inquiry into whether defendant needed an interpreter. During the inquiry, defendant informed the court that he did not need an interpreter and that he understood English. He explained that he had been in the United States for 40 years and went to school in this country. Additionally, the record does not reveal any reason for the court to suspect that defendant needed an interpreter or could not understand the proceedings. The record shows that when defendant orally waived the right to a jury trial, he indicated he understood what the court was asking and responded appropriately to the court's questions in English. After advising defendant of the charge against him, the court instructed him as to his right to have a jury trial. The following colloquy occurred:

   "THE COURT: All right. You do have the right to have a trial in one of two ways. The first way is what's called a jury trial. If you chose a jury trial, 12 Cook County residents would be chosen by you, your lawyer, and the State's Attorney. Those 12 people would listen to all of the evidence and all 12 would unanimously agree that the State proved you guilty beyond a reasonable doubt. Do you understand what a jury trial is?

   THE DEFENDANT: Yes ma'am.

   THE COURT: Would you like to have a jury trial in this case?

   THE DEFENDANT: No, I would like to have a bench trial, ma'am.

THE COURT: So you already know the second kind of trial. Let me first address that jury waiver form your lawyer gave me. Does this paper have your signature on it?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that when you sign this paper and give it to the court, you're saying formally you do not want to have the jury trial (the court) just described?

THE DEFENDANT: Yes, ma'am.

THE COURT: Did anybody force you to give up your jury trial rights?

THE DEFENDANT: No, ma'am.

THE COURT: Did anybody threaten you to get you to give it up?

THE DEFENDANT: No, ma'am.

THE COURT: Did anybody promise you anything?

THE DEFENDANT: No, ma'am.

THE COURT: Are you giving up your right to a jury trial of your own free will?

THE DEFENDANT: Yes, ma'am.

THE COURT: How old are you today?

THE DEFENDANT: 56.

THE COURT: How far did you go in school?

THE DEFENDANT: I went through the 11th grade.

THE COURT: Can you read and write English, sir?

THE DEFENDANT: Yes, ma'am."

¶ 30    Throughout the entire discussion of his right to a jury trial, defendant answered the questions posed in an appropriate manner. At no time did defendant indicate he did not

understand the questions posed of him. Moreover, his attorney never indicated that defendant had trouble understanding the court's questions. See *People v. Castro*, 109 Ill. App. 3d 561, 565 (1982) (finding that a defendant was not denied a fair trial by lack of an interpreter where the record lacked any indication that the defendant was "either not personally understandable, comprehensible or intelligible\*\*\* or was forced to answer questions which he did not understand.").

¶ 31    Given this record, the trial court did not abuse its discretion in accepting defendant's waiver for an interpreter. See *People v. Mehmedoski*, 207 Ill. App. 3d 275, 281 (1990) ("The trial court was in the best position to determine defendant's ability to understand and communicate in English and to understand the proceedings"). As such, we find no error has occurred.

¶ 32    For the reasons stated, we affirm the judgment of circuit court of Cook County.

¶ 33    Affirmed.